The Full Commission has reviewed the prior Opinion Award based on the record of the proceedings before Deputy Commissioner Edward Garner, Jr. and the briefs and oral arguments on appeal. Both parties have shown good ground to reconsider the evidence, receive further evidence and to amend the prior Opinion and Award.
Subsequent to the Opinion and Award filed by Deputy Commissioner Garner, the North Carolina Court of Appeals handed down a decision in COA 96-764 filed on 20 May 1997 in the case ofDelbert G. Swain v. CN Evans Trucking Company Inc. The Court of Appeals reversed the Industrial Commission decision setting aside a Compromise Settlement Agreement on the grounds of mutual mistake. The holding of the Court of Appeals was that the determination of average weekly wage is a matter of law rather than a mutual mistake of fact. The court noted that a mutual mistake of law has to be attended by fraud, misrepresentation, undue influence or abuse of confidential relationship before such a mistake can support recision of a Form 21 Agreement or a Compromise Settlement Agreement.
In the case sub judice, Mr. Clunk's average weekly wage was apparently lower than it should have been due to the fact that overtime was not calculated in setting the average weekly wage. Determination of his average weekly wage requires application of the definition set forth in the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(5) (1991). See, Lawrence v. Tise 107 N.C. App. 140,145, 419 S.E.2d 196, 179 (1992).
Deputy Commissioner Garner set aside the Compromise Settlement Agreement based upon a mutual mistake of fact. In light of the Swain decision, such recision of a Compromise Settlement Agreement is not valid and the decision of Deputy Commissioner Garner must be reversed.
Deputy Commissioner Garner did not reach the issue of whether there was misrepresentation on the part of defendants, which attended the persuasion of Mr. Clunk, unrepresented by counsel, to sign the Compromise Settlement Agreement. Although Deputy Commissioner Garner authorized the deposition of a representative of defendant-employer Pfizer in order to ascertain whether or not there was misrepresentation to plaintiff, the deposition was never taken. In addition, although defendant-employer was Ordered to produce a Form 22, the form was not produced and defendant-employer now alleges that it has been lost. In order to collect more information regarding plaintiff's overtime and to have additional information on the record regarding the alleged misrepresentations made to plaintiff, the case must and shall be remanded for the receipt of additional evidence on the issues of average weekly wage and misrepresentation.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Wausau Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage is to be determined by a Form 22.
5. The Commission takes judicial notice of Industrial Commission forms 18, 19 and 21.
6. The Compromise Settlement Agreement and a packet of medical records have been stipulated into evidence.
7. A letter to Mr. Clunk from Pfizer, Inc. concerning long-term disability benefits of Connecticut Life Insurance Company was admitted into evidence.
8. Summary of plaintiff's FICA earnings statement for the years 1972 through 1991 was admitted into evidence as Plaintiff's Exhibit #1.
9. The question for consideration is whether or not the Compromise Settlement Agreement entered into by plaintiff and defendant-employer should be set aside and upon what grounds it should be set aside.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a forty-one year old male who grew up in Southport, North Carolina and completed the ninth grade. He earned his GED subsequently.
2. Plaintiff went to work for defendant-employer in June of 1997 and last worked for the company in November of 1989. Plaintiff worked in the safety/security department as a security officer, a fireman and an emergency medical tech.
3. On 7 June 1989, plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with defendant-employer. He was responding to an emergency call concerning a lady who had fallen down a flight of steps. As plaintiff lifted the lady out of an ambulance, she nearly fell off a stretcher and plaintiff dropped his side of the stretcher, feeling something snap in his back the moment that occurred.
4. Plaintiff underwent spinal surgery, performed by Dr. Raymond Sattler in December 1989. A second surgery was required and performed by Dr. Sattler in May 1990.
5. On 17 January 1990, the parties entered into a Form 21 Agreement which provided that plaintiff was to receive ongoing compensation based upon an average weekly wage of $523.60, yielding a compensation rate of $349.08 per week. However, the Form 21 indicated that the compensation and the average weekly wage were specifically subject to wage verification.
6. The average weekly wage of $523.60 is a result of a calculation made by multiplying plaintiff's wage of $13.00 by 40 hours per week. Plaintiff regularly worked a number of hours of overtime each week, which was not calculated or considered in making the determination of his average weekly wage.
7. Following plaintiff's second surgery he returned to defendant-employer Pfizer in the summer of 1990. Plaintiff had reached maximum medical improvement and was released by Dr. Sattler to return to work but he had restrictions.
8. When plaintiff reported to his supervisor, Mr. Metcalf, he was informed that there were no jobs available within the restrictions given to plaintiff by Dr. Sattler. Plaintiff was advised by Mr. Metcalf to accept payment in the form of a Compromise Settlement Agreement in order to settle his Workers' Compensation claim. He had no claim for benefits for temporary total disability; however, he was making a claim on the basis of his permanent partial disability rating.
9. According to plaintiff, he was to receive a settlement amount pursuant to the Compromise Settlement Agreement of $20,000.00. According to plaintiff, Mr. Metcalf told him that the $20,000.00 would be given to him in a lump sum and could be utilized for emergency medical care or medical care in the future. Mr. Metcalf allegedly told plaintiff he would receive long-term disability benefits to cover the costs of daily living.
10. Plaintiff, who is not represented by an attorney, signed the Compromise Settlement Agreement. He received his $20,000.00 in a lump sum. However, he was unable to put it into a bank account and draw upon it as needed for medical treatments. Plaintiff was forced to spend the total $20,000.00 because he did not receive any long term disability through Pfizer and Connecticut General Life Insurance Company which he had been told he would receive. The $20,000.00 was offset against long term disability from the time that plaintiff's Workers' Compensation benefits terminated on 20 December 1990. Plaintiff received no long-term benefits until September 1991 when he received a payment of $288.00 through long term disability.
11. The deposition of Mr. Metcalf was approved by Deputy Commissioner Garner but was not taken.
12. The only evidence regarding plaintiff's total salary is social security FICA wages for various years, which was submitted into evidence.
13. It appears that plaintiff was subject to a gross misrepresentation about the benefits he would receive if he signed the Compromise Settlement Agreement. Plaintiff understood that he would be receiving the settlement of $20,000.00 in addition to long term benefits under Pfizer's long term disability plan with Connecticut General Life Insurance. However, Mr. Metcalf, who apparently made the misrepresentations, has not been questioned and thus the degree of the misrepresentation if any, cannot be ascertained.
14. At the time plaintiff and defendant entered into the Form 21 Agreement and the Compromise Settlement Agreement, both parties were operating under a mistake of law as to plaintiff's average weekly wage.
15. There is insufficient evidence of record from which to determine by its greater weight what plaintiff's actual earnings were during the period surrounding his injury by accident.
16. There is insufficient evidence of record from which to determine by its greater weight that misrepresentations were made by defendant-employer concerning the amounts of the settlement under the Compromise Settlement Agreement as well as the long-term disability benefits.
 ***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 7 June 1989 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The Form 21 Agreement for compensation for disability entered into by the parties and approved by the Industrial Commission on 17 January 1990 contained an error of law relating to the computation of plaintiff's average weekly wage.
3. A Compromise Settlement Agreement which cites the average weekly wage of plaintiff as $523.60 is the same as that in the Form 21 Agreement and thus contains an error with regard to the computation of plaintiff's average weekly wage. Plaintiff's average weekly wage requires application of the definition set forth in the Workers' Compensation Act. N.C. Gen. Stat. § 97-2(5). In the case law construing that statute and thus raises an issue of law not fact and does not affect the validity of the Form 21 Agreement or the Compromise Settlement Agreement. Lawrence v.Tise, 107 N.C. 140, 145, 419 S.E.2d 176, 179 (1972). Craft v.Bill Clark Construction Co., 123 N.C. App. 777, 780,474 S.E.2d 808, 810-11 disc. rev. denied 345 N.C. 179,479 S.E.2d 203 (1996).
4. There is no evidence of fraud, misrepresentation, undue influence or abuse of a confidential relationship attending the calculation of plaintiff's average weekly wage. Any mistake made by either or both the parties to the agreement and the computation of the average weekly wage are not a basis for setting it aside. 13 Am. Jur. 2d Cancellation of Instruments 36 @ 526 (1964).
5. Plaintiff has asserted that his agreement to accept a compromise Settlement Agreement was obtained by misrepresentation; however, there is not sufficient evidence to determine whether or not the misrepresentation occurred without the testimony by deposition of the person who made the misrepresentations, Mr. Metcalf.
6. The Compromise Settlement Agreement cannot be set aside without securing additional evidence concerning plaintiff's overtime pay and testimony from Mr. Metcalf.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. The Compromise Settlement Agreement approved by the Commission is hereby reinstated.
2. This case is remanded for taking of additional evidence including testimony regarding plaintiff's overtime pay and taking the deposition of Mr. Metcalf.
3. Defendants shall bear the costs.
 S/ ________________________ MARY MOORE HOAG DEPUTY COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ BERNADINE BALLANCE COMMISSIONER