Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 52 years of age. He completed the tenth grade and has a GED. His vocational background consists of employment in the trucking industry as a driver and as an owner-operator, employment as an insurance agent, and self-employment in automobile sales. His medical history is significant for a coronary bypass in 1987 and ongoing elevated cholesterol and hypertension.
2. On 6 June 1991 plaintiff was an owner-operator under a lease agreement with defendant-employer, a trucking company, and had been in such a capacity for approximately 11 weeks.
3. On 6 June 1991 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer when a 40 pound bulkhead fell onto the top of plaintiff's left foot from a height of approximately four feet, resulting in an injury to plaintiff's left foot.
4. Defendant-employer accepted liability for plaintiff's compensable injury and entered into a Form 21 Agreement with plaintiff which was approved by the Industrial Commission on 9 July 1991. The average weekly wage set forth on the Agreement, $1469.58, was obtained from the Form 19 which had been prepared by defendant-employer's employee Judy Johnson and reflected plaintiff's gross trip earnings divided by the number of weeks worked but did not take into consideration plaintiff's expenses incurred in generating his gross trip earnings. Any error in the computation of plaintiff's average weekly wages was the result of defendant's negligence in calculating the figure.
5. Based upon the average weekly wage contained on the Form 21 Agreement, defendant initiated payment of compensation to plaintiff at the rate of $406.00 per week, the maximum compensation rate on the date of his compensable injury, beginning 8 June 1991.
6. For his compensable injury, plaintiff was seen at Forsyth Memorial Hospital and Wesley Long Hospital, and by Drs. Parker and Lavender; and underwent treatment for left foot contusion, hematoma and cellulitis, including surgical decompression of a blood clot performed by Dr. Lavender on 16 June 1991. Plaintiff remained under Dr. Lavender's care until he was released to return to work without restriction on 13 August 1991.
7. Thereafter, plaintiff did not return to work with defendant, but instead entered into an owner-operator lease agreement with Morgan Drive-A-Way on 15 August 1991 under which he worked until approximately 9 October 1991. During this period of time plaintiff did not inform defendant of his lease agreement with Morgan Drive-A-Way and continued to receive his weekly compensation benefits. Inasmuch as during that period of time plaintiff had the capacity to earn the same wages he was earning at the time of his compensable injury, having been returned to work without restriction on 13 August 1991; and inasmuch as there is insufficient evidence of record from which to determine by its greater weight what plaintiff's actual earnings were during that period, it is reasonable to infer that plaintiff did not sustain any diminution in wage earning capacity from 15 August 1991 to 9 October 1991.
8. On 9 October 1991 plaintiff returned to Dr. Lavender with complaints of pain and swelling in his left foot. Upon examination, some swelling was present. Dr. Lavender took plaintiff out of work and prescribed orthopedic shoes and a physical therapy program which plaintiff failed to complete, ostensibly due to pain in his left foot. Thereafter, Dr. Lavender ordered further diagnostic testing consisting of a bone scan, the results of which were normal. As early as 12 December 1991 Dr. Lavender was of the opinion that plaintiff could not return to work as a truck driver or to any work which required prolonged standing.
9. On 8 January 1992 plaintiff was evaluated by Dr. Noah at the request of the third party administrator.
10. On 29 January 1992 plaintiff underwent vocational evaluation performed by the North Carolina State Division of Vocational Rehabilitation Services. Plaintiff's performance on measures of general mental ability and reading comprehension suggested that he would have difficulty retraining in an academic setting, such as a community college degree program.
11. Beginning February of 1992 defendant provided medical case management services to plaintiff which lasted until September 1992.
12. Dr. Lavender released plaintiff from his care on 29 May 1992 at which time plaintiff was released to return to work as tolerated by pain, but was restricted from returning to work as a truck driver or to any employment which required prolonged standing. Plaintiff did not return to work with defendant or to any other employment at that time.
13. On 13 October 1992 plaintiff underwent a functional capacity evaluation during the course of which he provided submaximal effort and exhibited symptom magnification. At that time, plaintiff was capable of engaging in light duty employment.,
14. In November 1992, defendant, through the third party administrator, initiated vocational rehabilitation and job placement services, which continued until July 1993. During this time the Industrial Commission ordered plaintiff on 3 December 1992 and again on 29 March 1993, pursuant to Form 24 applications filed with the Industrial Commission by defendant and the third party administrator, to comply with vocational rehabilitation provided by defendant. During this time, plaintiff minimally complied with the procedural aspects of vocational rehabilitation such as filling out job logs, locating job leads on his own, and submitting applications. However, the conduct of plaintiff's counsel, which actions were obstructionist in nature, as well as plaintiff's own refusal to participate in vocational rehabilitation activities designed to enhance his job search skills, his failure to timely follow up on job leads, his refusal to follow up on certain job leads that were within his restrictions and his presentation to prospective employers that he was not interested in the job that he was applying for but that he was there because he had to be as well as his complaints to the same of his incapacitating medical problems, were, as of 29 March 1993, tantamount to a refusal to accept rehabilitation services which plaintiff had been ordered by the Industrial Commission to accept.
15. In July 1993 plaintiff informed the vocational rehabilitation specialist that he had been approved for Social Security Disability Income and would no longer participate in vocational rehabilitation and job placement services or look for employment. Thereafter, vocational rehabilitation and job placement services which had earlier been scaled back in terms of periodic meetings between plaintiff, his attorney and the vocational rehabilitation specialist(s) due to the deteriorating relationship between the parties resulting from the matters more explicitly set forth in Finding of Fact #13 hereinabove, were suspended.
16. Plaintiff was seen by Dr. Noah again on 9 February 1993 at which time he was able to return to work as a truck driver, even driving a truck which required the operation of a clutch.
17. On 3 December 1993 a Form 24 was approved by the Industrial Commission and defendant ceased paying compensation as of that date.
18. Plaintiff contends that he still has constant pain and swelling in his left foot which renders him unable to work in any employment.
19. As a result of his 6 June 1991 compensable injury, plaintiff was unable to earn any wages in any employment from 8 June 1991 to 15 August 1991 and from 9 October 1991 to 29 March 1993.
20. As a result of his 6 June 1991 compensable injury, plaintiff has a seven and one-half percent permanent partial impairment to his left foot.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 6 June 1991 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. The Form 21 Agreement for Compensation for Disability entered into by the parties and approved by the Industrial Commission on 9 July 1991 contains an alleged error relating to the computation of the average weekly wage. The determination of plaintiff's average weekly wage requires application of the definition set forth in the Workers' Compensation Act, N.C. Gen. Stat. § 97-2(5) and the case law construing that statute and thus raises an issue of law, not fact, and does not affect the validity of the Form 21 Agreement. Lawrence v. Tise,107 N.C. App. 140, 145, 419 S.E.2d 176,179 (1992); Craft v.Bill Clark Construction Co., 123 N.C. App. 777, 780,474 S.E.2d 808, 810-11, disc. rev. denied, 345 N.C. 179,479 S.E.2d 203 (1996).
3. Because there is no evidence of fraud, misrepresentation, undue influence or abuse of a confidential relationship, any mistake made by either or both of the parties to the Agreement in the computation of the average weekly wage is not a basis for setting it aside. 13 Am. Jur. 2d Cancellation of Instruments § 36, at 526 (1964).
4. Inasmuch as plaintiff's actions as of 29 March 1993 constituted a refusal to accept vocational rehabilitation and job placement services which he had been ordered to accept by Orders of the Industrial Commission dated 3 December 1992 and 29 March 1993, plaintiff is suspended from receiving compensation due under the terms of the Form 21 Agreement entered into by the parties after 29 March 1993 until such time as the Full Commission determines that plaintiff's refusal to accept vocational rehabilitation has ceased. N.C. Gen. Stat. §97-25.
5. As a result of his 6 June 1991 injury by accident, plaintiff was temporarily totally disabled from 8 June 1991 to 15 August 1991 and from 9 October 1991 to 29 March 1993, for which he is entitled to compensation at the rate of $406.00 per week for the aforementioned period. N.C. Gen. Stat. § 97-29.
6. As a result of his 6 June 1991 injury by accident, plaintiff sustained a seven and one-half percent permanent partial impairment of his right foot for which he is entitled to 10.8 weeks of compensation at the rate of $406.00 per week. N.C. Gen. Stat. § 97-31(14).
7. As a result of his 6 June 1991 injury by accident, plaintiff is entitled to have defendant pay all medical expenses incurred to the extent that the same tend to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. §97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER AND AWARD
1. The Form 21 Agreement approved by the Commission on 9 July 1991 is hereby REINSTATED and defendant is ordered to pay all sums, including interest, which should have been paid pursuant to the Agreement.
2. Defendant is not required to make any payments that were due subsequent to 29 March 1993 until such time as the Full Commission determines that plaintiff's refusal to accept vocational rehabilitation has ceased.
3. Defendant shall pay all medical expenses incurred as a result of plaintiff's 6 June 1991 injury by accident to the extent the same are necessary to effect a cure, give relief or lessen the period of plaintiff's disability.
4. Each side shall pay its own costs, except that defendant shall pay expert witness fees in the amount of $240.00 to Dr. Dick Lavender, $200.00 to Kathryn Long and $225.00 to Sandra Locklear.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/______________________ THOMAS J. BOLCH COMMISSIONER