BETTY TENN LAWRENCE v. LARRY EDWARD TISE

LARRY EDWARD TISE v. BETTY TENN LAWRENCE

No. 9128DC563

(Filed 4 August 1992)

**1. Divorce and Separation § 400 (NCI4th)— child support— determination of parent's income—real estate depreciation**

The findings were not sufficient in a child support action for the appellate court to determine whether the trial court had properly applied the Child Support Guidelines in determining the father's gross income. It was not clear whether the court considered real estate depreciation and, if so, whether the depreciation claimed was straight line or accelerated. Accelerated depreciation is expressly not allowed by the Guidelines as a deduction from a parent's income; as for straight line depreciation, the approach more consistent with the Guidelines is to allow the trial court the discretion to deduct the amount of straight line depreciation allowed by the Internal Revenue Code.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

**2. Divorce and Separation § 401 (NCI4th)— child support— determination of parent's income—real estate income and losses**

There was no evidence in a child support action that the father was intentionally depressing his income from rental properties and no evidence that the property was held by the father as trustee for his sons by his prior marriage, which would prevent the deduction of losses from his income. Losses incurred by the father on rental properties due to ordinary and necessary expenses are deductible from the father's income; ordinary and necessary expenses include expenses for repairs, property management and leasing fees, real estate taxes, insurance, and mortgage interest, but not mortgage principal payments. Remand is necessary because the trial court treated mortgage principal payments as a deductible expense.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

LAWRENCE v. TISE

[107 N.C. App. 140 (1992)]

3. **Divorce and Separation § 400 (NCI4th)— child support—father's income—non-reimbursed expenses**

The trial court erred in a child support action by improperly considering the father's non-reimbursed employee expenses. Although the Guidelines permit the trial court to deduct ordinary and necessary expenses required for self-employment or business operation, there is no provision permitting an employee to deduct expenses incurred in his employment.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

4. **Divorce and Separation § 392 (NCI4th)— child support—medical and dental expenses—apportionment between parents—discretion of trial court**

A child support order was remanded where the order required equal payment of uninsured medical and dental expenses on behalf of the child. Uninsured medical and dental expenses are to be apportioned between the parties in the discretion of the trial court; here, given the large disparity in the incomes of the parties in the instant case, an order requiring equal payment of uninsured medical and dental expenses incurred on behalf of the child is manifestly unsupported by reason.

**Am Jur 2d, Divorce and Separation §§ 1035, 1040, 1042.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 864.**

5. **Divorce and Separation § 397 (NCI4th)— child support—retroactive—based on Guidelines rather than actual expenditures—error**

The trial court erred in a child support action by basing the retroactive award on the Guidelines in effect at the time the expenses were incurred rather than on the actual expenditures.

**Am Jur 2d, Divorce and Separation §§ 1041, 1042.**

6. **Divorce and Separation § 397 (NCI4th)— child support—medical insurance premiums—joint policy—no evidence of premium attributable to child**

The trial court did not err in a child support order by refusing to treat a portion of the medical insurance premiums

LAWRENCE v. TISE

[107 N.C. App. 140 (1992)]

paid by the mother for a policy insuring herself and the child as an expenditure incurred on behalf of the child. Medical insurance premiums paid by a parent on behalf of a child are actual expenditures which must be considered in computing retroactive support, but there was no evidence in this case to support a finding on the portion of the premiums attributable only to coverage of the child.

Am Jur 2d, Divorce and Separation §§ 1041, 1042.

7. Divorce and Alimony § 397 (NCI4th) — retroactive child support — reasonable actual expenditures — child care and homemaker services

The trial court erred when awarding retroactive child support by utilizing the Guidelines to determine the allocation of the retroactive obligation and not considering the custodial parent's child care and homemaker services. The trial court should consider any "indirect support" made by either parent for the child during the period in question.

Am Jur 2d, Divorce and Separation §§ 1041, 1042.

8. Divorce and Separation § 522 (NCI4th) — child support — attorney fees — good faith and ability to pay

A trial court order denying the mother's request for attorney fees in a child support action was reversed where the action was properly characterized as one for custody and support because both the custody and support actions were before the court at the time the case was called for trial, even though the issue of custody was quickly settled; the evidence showed that the mother was an interested party acting in good faith; and the finding that the mother had the means to pay her attorney was not supported by the evidence. N.C.G.S. § 50-13.6.

Am Jur 2d, Divorce and Separation § 586.

APPEAL by plaintiff Betty Tenn Lawrence from order entered 30 November 1990 in BUNCOMBE County District Court by *Judge Robert L. Harrell.* Heard in the Court of Appeals 7 April 1992.

*Betty Tenn Lawrence for plaintiff-appellant.*

*Gum & Hillier, P.A., by Ingrid Friesen, for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals from a child support order entered 30 November 1990.

Plaintiff Betty Tenn Lawrence (Mother) and defendant Larry Edward Tise (Father), who have never been married to each other, are the parents of William Zane Lawrence (the child), born 3 September 1988. Mother is forty-two years old. She is divorced and has no other children. Mother worked for the public library in Asheville prior to attending Duke University School of Law in 1980. After graduating from law school, Mother worked for three years as an associate at a New York City law firm. In 1986, she returned to Asheville, obtained her license to practice law in North Carolina, and began restoration and repair of a large house which serves as her residence as well as the law offices for her solo practice.

Father is forty-eight years old, divorced, and has two children from a former marriage, now ages twenty-three and eighteen. Father has a Ph.D. in history and is an historian and current director of the Benjamin Franklin National Memorial of the Franklin Institute in Philadelphia, Pennsylvania (the Franklin Institute).

Mother and Father met in 1975 and maintained a friendship for several years. In November, 1987, Father visited Mother at her home in Asheville. During this visit, the child was conceived. Mother informed Father of her pregnancy in late December, 1987. Thereafter, Mother and Father communicated about the pregnancy and Mother's options on several occasions. In February, 1988, Father for the first time denied paternity of the child and ceased communication with Mother. The child was born on 3 September 1988. Despite repeated requests from Mother, Father refused to visit the child or to provide support. Since the child's birth, Mother has operated a solo law practice out of her residence in order to remain at home with her son.

Mother filed an action to establish paternity and compel payment of child support on 12 June 1989. Father continued to deny paternity, and, in fact, denied having sexual intercourse with Mother. On 16 August 1990, after the results of court-ordered blood tests indicated a 99.99 percent probability of paternity, Father signed an affidavit of paternity and simultaneously filed a complaint for sole custody of the child, who was then twenty-three months old. On 16 August 1990, Mother and Father entered into a consent

order pursuant to which Father agreed to pay $575.00 per month as temporary child support until the child support matter could be heard and resolved. On 17 September 1990, Mother filed an answer and counterclaim seeking custody of the child and support.

Mother's original paternity and support action, Father's custody action, and Mother's counterclaim for custody and support were consolidated for evidentiary hearing and were heard on 22, 23, and 24 October, 1990. On 23 October 1990, Mother and Father executed a memorandum of judgment pursuant to which Mother was awarded sole custody of the child subject to reasonable and liberal visitation of Father. On 24 October 1990, the child support issues were resolved by the trial court. On 30 November 1990, the trial court signed a consent order covering custody and visitation in accordance with the 23 October 1990 memorandum of judgment. The court also signed an order awarding Mother retroactive child support in the amount of $10,248.30, reimbursement of medical expenses attributable to pregnancy and birth in the amount of $1,477.19, and payment of future child support in the amount of $483.00 per month, to be reduced to $463.00 per month upon presentation by Father of evidence of medical and dental insurance, and denying Mother's request for attorney's fees. From the latter order, Mother appeals.

---

The issues are whether the trial court I) may, pursuant to the North Carolina Child Support Guidelines, properly deduct when calculating a parent's monthly gross income: (A) straight line depreciation taken on investment rental property; (B) other losses from the operation of investment rental property; and (C) non-reimbursed employee expenses; II) abused its discretion in ordering that medical and dental expenses incurred on behalf of the child which are not covered by insurance be shared equally by the parties, rather than according to each parent's proportionate share of the basic child support obligation; III) erred in utilizing the North Carolina Child Support Guidelines to calculate retroactive child support; and IV) erred in denying Mother's request for attorney's fees pursuant to N.C.G.S. § 50-13.6.

I

Gross Income

The trial court concluded that Father's "monthly gross income" was "as shown in the child support obligation worksheet form at-

tached to this Order . . . ."[1] The attached worksheet reflects that Father's "monthly gross income" is $3605.00. The trial court used this amount to compute the monthly child support obligations of Mother and Father in accordance with the North Carolina Child Support Guidelines (Guidelines).[2]

The trial court made the following pertinent findings of fact in support of its conclusion regarding Father's monthly gross income:

36. That . . . [from 1 January 1990 through August 1990, Father] incurred net losses [from the operation of certain rental property owned by Father] as a result of payment of repairs, leasing fees, property management fees, mortgage payments, taxes and insurance . . . (but not depreciation) [in the amount of $8027.97].

38. That for the months of September, October, November, and December, 1990, [Father] estimates additional net losses as a result of [his rental properties] in the amount of $1500.00 . . . .

41. . . . That [Father's] current monthly salary [at the Franklin Institute] is $5208.33.

42. That [Father] estimates that he will have interest income for 1990 of approximately $1,500.00.

43. That [Father] estimates that he will have income from dividends for 1990 of approximately $244.62.

44. That [Father] has income in addition to his employment at the Franklin Institute as a result of his reputation and experience as an historian, and expects to receive approximately $500.00 income (after expenses) for 1990. . . .

45. That [Father] estimates that as a result of his employment at the Franklin Institute he will incur various expenses which

---

1. Because the determination of "gross income" requires the "application of fixed rules of law," it is properly denominated a conclusion of law rather than a finding of fact. *See Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982).

2. The July, 1990 revision of the Guidelines was in effect at the time of the trial court's order in this case and is applicable to resolution of the issues discussed herein. However, with regard to the issues raised in this appeal, the most recent revision of the Guidelines (August, 1991) has not altered the July, 1990 version. Therefore, our use of "Guidelines" in this opinion references both the July, 1990 and August, 1991 versions of the Guidelines.

will not be reimbursed by the Franklin Institute, but which are directly related to his employment there, in the amount of approximately $5,000.00 to $7,000.00 for 1990, including memberships in various organizations, books, Christmas presents for his staff and entertainment expenses.

46. That during the year 1989 [Father] received a one time payment of six months wages as severance pay, as a result of his termination at the American Association of State and Local Historians, and as a result, his income from wages totalled $80,337.16 for that year.

47. That [Father's] interest income in 1989 totalled $3,999.83, and dividend income was $244.62 for the year 1989.

48. That during 1989, [Father] had net business income as an historian in the amount of $353.05, after deduction of expenses of $3,429.94.

49. That as a result of real estate investments during 1989, [Father] reported losses of $7,571.13 on his Federal Income Tax Return, of which $5,677.76 was reported as a loss due to depreciation.

50. That [Father] had unreimbursed employee expenses of $7,726.87 in 1989, as reported on his Federal Income Tax Return.

51. That during 1988, [Father] received wages and salary totalling $69,099.92, and interest income of $2,257.03, and dividend income of $219.63.

52. That during 1988 [Father] incurred losses as a result of his real estate investments in the amount of $11,424.22, as shown on his Federal Income Tax Return, of which $7,326.42 was reported as a loss due to depreciation.

53. That during 1988 [Father] incurred unreimbursed employee expenses of $11,133.58, as shown on his Federal Income Tax Return.

54. That during 1988 [Father] received net income as a result of his work as an historian in the amount of $1,069.83, after deductions totalling $2,364.20 as shown on his Federal Income Tax Return.

The foregoing findings indicate that the trial court considered in the computation of Father's monthly gross income Father's: (1)

wages and salaries for 1990, 1989, and 1988; (2) losses from real estate investments for 1990, 1989, and 1988; (3) interest income for 1990, 1989, and 1988; (4) dividend income for 1990, 1989, and 1988; (4) non-reimbursed employee expenses for 1990, 1989, and 1988; and (5) "severance pay" for 1989.

Mother argues that the trial court erred in computing Father's monthly gross income. Specifically, she contends that the trial court erred in deducting from Father's income: (1) depreciation taken by Father on rental properties; (2) other losses from the operation of the rental properties; and (3) non-reimbursed employee expenses.

### Depreciation

[1] Mother argues that depreciation is a paper loss and does not represent any monies actually being spent by Father and thus should not be deducted from Father's income for the purpose of determining his monthly gross income.

The Guidelines define "income" as "actual gross income of the parent . . . ." "Gross income" includes "income from any source," including, among other things, salaries, wages, dividends, interest, and severance pay. In addition, the Guidelines define gross income from self-employment or operation of a business, including income from rent, as "gross receipts minus ordinary and necessary expenses required for self-employment or business operation." Specifically excluded from ordinary and necessary expenses is "the accelerated component of depreciation expenses . . . or any other business expense determined by the Court to be inappropriate for determining gross income for purposes of calculating child support." Thus, accelerated depreciation is expressly not allowed as a deduction from a parent's income.

With regard to straight line depreciation, the Guidelines are silent and there are no cases in North Carolina addressing its deductibility. Of the varied treatment given this issue among the jurisdictions, the approach more consistent with our Guidelines is to vest the trial court with the discretion to deduct from a parent's monthly gross income the amount of straight line depreciation allowed by the Internal Revenue Code. The Internal Revenue Code permits "a reasonable allowance for the exhaustion, wear, and tear" of certain property over its useful life. *See generally* I.R.C. §§ 167, 168 (1990); *see also In re Marriage of Gaer*, 476 N.W.2d 324, 328 (Iowa 1991) (straight line depreciation properly

deducted if necessary "to do justice between the parties"); North Carolina Child Support Guidelines (granting trial court discretion to disallow deductions deemed "inappropriate for determining gross income").

In the instant case, we are unable to ascertain how the trial court treated depreciation. Finding No. 36 indicates that the court did not consider any depreciation in computing defendant's rental property losses. In Finding Nos. 49 and 52, the trial court determined the amount of depreciation claimed by defendant on his income tax returns, but it is not clear whether the court considered the depreciation in computing defendant's monthly gross income. In any event, to the extent, if any, the trial court considered depreciation, the record does not reveal whether the depreciation claimed by defendant was straight line or accelerated. Thus, the findings in this regard are not sufficiently specific to indicate to this Court whether the trial court properly applied the Guidelines in computing Father's gross income, and remand is necessary. *See Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980) (findings must show steps used by trial court to reach conclusions).

## Rental Property Losses

[2] Mother first argues that Father invested in certain non-income producing rental properties for the sole purpose of depressing his income in light of the instant litigation, and that therefore some reasonable rental value should be imputed to defendant. We agree that if the evidence supported a finding that Father is failing to make a good faith effort to obtain the best and highest rental income from the properties, then the trial court would be required to utilize the potential rather than the actual income from the operation of these rental properties in determining Father's monthly gross income. *See Robinson v. Robinson*, 10 N.C. App. 463, 468, 179 S.E.2d 144, 147 (1971). However, there is no evidence in the record that Father is intentionally depressing his income from the rental properties.

Mother next argues that, because the trial court found that Father purchased certain rental property "with the intention of meeting his obligations to pay for the college expenses" of Father's two sons from his former marriage, the income from the property is held in trust for the sons and thus the "trust," not Father, is entitled to claim the losses attributable to the property. Although we agree with Mother that losses from property held in trust

for another cannot be deducted from a parent's income in determining gross income under the Guidelines, there is no evidence in the instant case that the property is held by Father as trustee for his sons. Rather, the evidence reveals that the rental property is the personal investment of Father. The fact that Father purchased it with the intention of meeting his obligations to pay his sons' college expenses does not make it trust property.

Therefore, to the extent that the losses incurred by Father on the rental properties were due to "ordinary and necessary expenses," the losses are deductible from Father's income. *See* North Carolina Child Support Guidelines. "[O]rdinary and necessary expenses," although not specifically defined in the Guidelines, include expenses for repairs, property management and leasing fees, real estate taxes, insurance, and mortgage interest. Mortgage principal payments, however, are not an "ordinary and necessary expense" within the meaning of the Guidelines. Because the trial court, as revealed in Finding No. 36, treated mortgage principal payments as a deductible expense, remand is necessary.

### Non-reimbursed Employee Expenses

[3] Mother argues that the trial court erred by deducting from Father's income the non-reimbursed expenses incurred by Father in his employment with the Franklin Institute.

Although the Guidelines permit the trial court to deduct "ordinary and necessary expenses required for self-employment or business operation," there is no provision permitting an employee to deduct expenses incurred in his employment. The Guidelines do provide, however, that "expense reimbursements or in-kind payments received by a parent in the course of employment . . . should be counted as income if they are significant and reduce personal living expenses." Because the trial court in Finding No. 45 improperly considered Father's non-reimbursed employee expenses with the Franklin Institute, remand is necessary.

On remand the trial court will make new findings on Father's monthly gross income based on the evidence in the record. In this regard, the court must determine Father's gross income as of the time the child support order was originally entered, not as of the time of remand nor on the basis of Father's average monthly gross income over the years preceding the original trial. *See Holt v. Holt*, 29 N.C. App. 124, 126, 223 S.E.2d 542, 544 (1976)

(court must set support based on parent's "present income"). Using the correct monthly gross income figure, the trial court will ascertain the presumptive amount of support in accordance with the Guidelines. In addition, because the trial court originally heard evidence and made findings relating to the reasonable needs of the child and the relative ability of each parent to provide support, the trial court may deviate from the presumptive amount if it determines that the presumptive amount "would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would otherwise be unjust or inappropriate." N.C.G.S. § 5013.4(c) (Supp. 1991); *Browne v. Browne*, 101 N.C. App. 617, 623, 400 S.E.2d 736, 740 (1991) (notice of request for deviation not required where parties introduce evidence on factors listed in Section 5013.4(c) ).

## II

## Medical Expenses

[4]   The trial court in its order required Father to obtain medical and dental insurance on the child, with Mother and Father to share equally any medical and dental expenses incurred on behalf of the child not covered by such insurance. Mother argues that the parties should share this expense in the same proportion as the "percentage share of income" shown on the Guidelines worksheet, that is, in the same proportion that the parties share the basic child support obligation. The trial court determined that Mother's share of the basic child support obligation was six percent, and Father's ninety-four percent.

The Guidelines do not provide a direct answer to the question presented. While the Guidelines state that the cost of professional counseling or psychiatric therapy for a child "shall be apportioned in the same manner as the basic child support obligation," there is no requirement that the cost of other "extraordinary expenses" be apportioned in any particular manner. *See* North Carolina Child Support Guidelines. We see no reason to treat the apportionment of ordinary medical and dental expenses not covered by insurance differently from the apportionment of these other "extraordinary expenses." Accordingly, uninsured medical and dental expenses are to be apportioned between the parties in the discretion of the trial court. In other words, any decision by the court in this regard must be upheld absent a showing that it is "manifestly unsupported by reason." *See White v. White*, 312 N.C. 770, 777, 324 S.E.2d

829, 833 (1985). Given the large disparity in the incomes of the parties in the instant case, an order requiring equal payment of uninsured medical and dental expenses incurred on behalf of the child is "manifestly unsupported by reason" and therefore remand is necessary.

### III

### Retroactive Child Support

Mother argues that the trial court's order of retroactive child support is defective in several respects. First, she contends that the trial court erred by applying the Guidelines to determine the amount of Father's retroactive child support obligation. We agree.

[5] Retroactive child support is based on the non-custodial parent's share of the reasonable actual expenditures. made by the custodial parent on behalf of the child. *Hicks v. Hicks*, 34 N.C. App. 128, 130, 237 S.E.2d 307, 309 (1977); *Tidwell v. Booker*, 290 N.C. 98, 116, 225 S.E.2d 816, 827 (1976). The amount of support which the non-custodial parent "should have paid" based on an application of the Guidelines is not the appropriate test of liability. *See Hicks*, 34 N.C. App. at 130, 237 S.E.2d at 309. A proper application of the Guidelines establishes the support necessary to meet the reasonable needs of the child. *See Browne*, 101 N.C. App. at 624, 400 S.E.2d at 740 (absent a request for deviation, support "consistent with the guidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child for health, education and maintenance"). The calculation of retroactive child support, on the other hand, focuses on the amount of monies actually expended by the custodial parent on the child. *Cohen v. Cohen*, 100 N.C. App. 334, 347, 396 S.E.2d 344, 351 (1990), *disc. rev. denied*, 328 N.C. 270, 400 S.E.2d 451 (1991). In the instant case, although the trial court made a finding on Mother's actual expenditures during the period for which retroactive support is sought, the court instead based the retroactive support award on the Guidelines in effect at the time the expenses were incurred by Mother. This was error requiring reversal of the order of retroactive support.

[6] Second, Mother argues that the trial court erred in refusing to treat a portion of the medical insurance premiums paid by Mother for an insurance policy insuring both Mother and child as an actual expenditure incurred on behalf of the child. We agree that medical insurance premiums paid by a parent on behalf of a child are actual

expenditures which must be considered in computing retroactive child support. *See* Helen Donigan, Calculating and Documenting Child Support Awards Under Washington Law, 26 Gonzaga L. Rev. 13, 40 n.174 (1990/91) (difference between cost for parent's individual coverage and cost if child is added serves as accurate reflection of amount of premium attributable to child). In this case, however, the failure of the trial court to treat a portion of Mother's premiums as an actual expenditure for the purposes of calculating retroactive support was not error because there is no evidence in the record to support a finding on the portion of the premiums for the joint policy attributable only to coverage of the child. In the absence of such evidence, the trial court could only speculate as to the child's share of the cost, and this it cannot do.

[7] Third, Mother argues that in determining Father's share of the reasonable actual expenditures made by Mother during the period for which retroactive child support is sought, the trial court must consider her child care and homemaker services rendered during this period. We agree. In determining the non-custodial parent's share of the custodial parent's reasonable actual expenditures in a retroactive support action, the trial court should consider the relative abilities of the parents to pay support (considering the estates, earnings, and the reasonable expenses of the parents) and any "indirect support" made by either parent for the child during the period in question. *Stanley v. Stanley*, 51 N.C. App. 172, 181, 275 S.E.2d 546, 552, *disc. rev. denied*, 303 N.C. 182, 280 S.E.2d 454, *cert. denied*, 454 U.S. 959, 70 L.Ed.2d 374 (1981); *Plott v. Plott*, 313 N.C. 63, 77, 326 S.E.2d 863, 871 (1985). One form of such "indirect support" is "child care and homemaker contributions" rendered by a parent. *Id.*; N.C.G.S. § 5013.4(c) (Supp. 1991). Because the trial court utilized the Guidelines to determine the allocation of the retroactive child support obligation, it did not consider the proper factors and therefore erred. On remand, Mother's award for retroactive child support is to be determined consistent with this opinion and for the period of 3 September 1988 through 31 August 1990.

## IV

### Attorney's Fees

[8] Mother contends that the trial court erred in denying her request for attorney's fees pursuant to N.C.G.S. § 5013.6. We agree.

LAWRENCE v. TISE

[107 N.C. App. 140 (1992)]

The trial court found as a fact that Mother was "able to pay her own attorney" and ordered that she was "not entitled to reimbursement for her attorney fees . . . ." The evidence reveals that Mother incurred legal fees in connection with this action in the amount of $6741.00; that her monthly gross income is $215.00 and that her monthly expenses exceed her gross income; that she has $4000.00 in non-liquidable IRA's and $2600.00 in an IRA money market account; and that she owns a home which she purchased in 1986 for $50,000.00 which has a mortgage of $40,000.00, and an adjoining vacant lot with a tax value of $10,000.00.

Attorney's fees may be awarded by the trial court in an action for custody or in an action for custody and support to an interested party who, acting in good faith, has insufficient means to defray the expense of the suit. N.C.G.S. § 5013.6 (Supp. 1991). A party has insufficient means to defray the expense of the suit when he or she is "unable to employ adequate counsel in order to proceed as litigant to meet the other spouse as litigant in the suit." *Hudson v. Hudson*, 299 N.C. 465, 472, 263 S.E.2d 719, 724 (1980). If the action is one for support only, an additional finding must be made that "the party ordered to furnish support has refused to provide support which is adequate under the circumstances existing at the time of the institution of the action." *Id.* at 472-73, 263 S.E.2d at 724.

The instant action is properly characterized as one for "custody and support" because both the custody and support actions were before the trial court on 22 October 1990, the time the case was called for trial. This is so despite the fact that the parties "quickly settled" the issue of custody. *See Theokas v. Theokas*, 97 N.C. App. 626, 630, 389 S.E.2d 278, 280, *disc. rev. denied*, 327 N.C. 437, 395 S.E.2d 697 (1990). Accordingly, the question is whether Mother is an interested party acting in good faith and without sufficient funds to defray the expenses of the suit. The answer is yes.

Although the trial court did not make any findings or conclusions as to Mother's good faith, the evidence shows that she is an interested party acting in good faith. *See Cobb v. Cobb*, 79 N.C. App. 592, 597, 339 S.E.2d 825, 829 (1986) (better practice is to make such a finding but not fatal where evidence undisputed). Moreover, the trial court's finding that Mother has the means to pay her attorney is not supported by the evidence. Mother's income from her law practice is not sufficient to pay her legal expenses,

and she is not required to deplete her small estate in order to pay these expenses. *Id.* Accordingly, the order of the trial court denying Mother's request for attorney's fees is reversed and is remanded for entry of an order allowing such fees and in an amount consistent with the evidence in the record.

We have reviewed Mother's remaining assignments of error and find them to be either without merit or rendered moot by our treatment of the issues discussed herein. This case is remanded to the trial court for entry of a new order consistent with this opinion.

Reversed and remanded.

Judges PARKER and COZORT concur.