JANICE MAULDIN CAUBLE, Plaintiff v. TED JAMES CAUBLE, Defendant

No. COA97-1274

(Filed 1 June 1999)

**1. Child Support, Custody, and Visitation— child support— calculation of income—closely held corporation**

The trial court did not abuse its discretion in a child support action by imputing income to defendant from a closely held farm supply business without finding that defendant had deliberately depressed his income where the uncontradicted evidence supported the finding that the profits were available to defendant by virtue of his controlling interest in the closely held corporation.

**2. Child Support, Custody, and Visitation— child support— calculation of income—accrual accounting**

The trial court did not abuse its discretion in a child support action by not considering the accrual accounting method used by defendant's closely held corporation in calculating defendant's income. Although defendant argued that the accrual method creates fictional income and that the court could make no determination of income actually available, accrual accounting figures represent income which is taxable for federal tax purposes and such amounts are thus properly considered for purposes of the Child Support Guidelines. Furthermore, in determining an obligor's gross income derived from an interest in a closely held corporation, the court in its discretion may allow appropriate adjustments.

**3. Child Support, Custody, and Visitation— child support— closely held corporation—bad debts**

The trial court did not abuse its discretion in a child support action by not allowing claimed bad debt and depreciation expenses from a closely held corporation in computing defendant's gross income. Under the Guidelines, the court is accorded the discretion to discern those business expenses which are inappropriate for determining gross income for purposes of calculating child support.

**4. Child Support, Custody, and Visitation— child support— calculation of income—losses**

The trial court erred in a child support action by not including in defendant's income losses from a corporation. Although

CAUBLE v. CAUBLE

[133 N.C. App. 390 (1999)]

straight line depreciation may be excluded from an obligor's gross income in the court's discretion, the order in this case contains no reference to defendant's ownership interest in this corporation and fails to reflect its treatment of these corporate figures. The findings are not sufficiently specific to indicate whether the court properly applied the Guidelines.

Appeal by defendant from order filed 5 May 1997 by Judge Susan C. Taylor in Stanly County District Court. Heard in the Court of Appeals 18 August 1998.

*Morton, Grigg & Phillips, by Ernest H. Morton, Jr. and David L. Grigg, Jr., for plaintiff-appellee.*

*Tucker, Slaughter & Singletary, P.A., by William C. Tucker, for defendant-appellant.*

JOHN, Judge.

Defendant appeals the trial court's child support order, asserting the court erred by (1) "improperly calculating the income of the [defendant] from the Farm Supply business"; and (2) "not including in the income of the [defendant] the losses from the Fun Park corporation." We vacate in part and remand in part.

Pertinent facts and procedural history include the following: Plaintiff and defendant, both residents of Stanly County, were married 29 December 1968. Amanda Beth Cauble, the sole child of the marriage, was born 24 November 1985. Following separation in early 1991, the parties divorced 26 September 1994. Subsequent to a hearing at the 28 October 1996 Session of Stanly County District Court, an order awarding plaintiff custody of Amanda was filed 24 March 1997.

Plaintiff's claim for child support was heard during the 19 March 1997 Civil Non-Jury Session of District Court of Stanly County. In its 5 May 1997 order, the court entered the following relevant findings of fact:

7. The plaintiff testified that she was employed by Home Savings Bank of Albemarle and that her current gross monthly earnings are $2,885.00. . . .

8. In June of 1983, plaintiff and defendant founded Stanly Farm Supply, Inc. (hereinafter called "Stanly Farm") with the

defendant owning 51% of the outstanding shares of capital stock, namely, 251 shares, and the plaintiff owning 49% of the outstanding shares of capital stock, namely, 249 shares.

9. Stanly Farm is a closely held corporation.

10. Since June 1, 1983, defendant has managed the Stanly Farm business as its chief executive officer.

11. Since June 1, 1983, Stanly Farm has been engaged in the business of selling feeds, seeds, fertilizer, farm equipment, farm supplies and other related items to the farming communities in Stanly County and other surrounding counties.

12. Since January 1, 1983, Stanly Farm has been a C corporation with its fiscal year being the same as the calender year and its method of accounting being the accrual method.

13. For more than three years, the defendant's annual salary with Stanly Farm has been $8,000.00 In addition he has rented a dump truck to Stanly Farm and has received annual rental income of $5,400.00

. . . .

15. Since June 1, 1983, Stanly Farm has had taxable income each calendar year, with the exception of 1996, which tax return shows a taxable income loss of $1,498.71.

16. All income after payment of taxes of Stanly Farm since its inception in June of 1983 have been retained and the accumulated retained earnings on December 31, 1996 was $470,676.20.

In arriving at defendant's gross income from Stanly Farm Supply, Inc. (Stanly Farm), the trial court allowed the following as ordinary and necessary business expenses of the corporation:

Salaries and wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $62,599.72

Taxes and Licenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . $10,532.72

Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $    487.56

Advertising . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 5,533.72

Other deductions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $74,409.79

However, "in the interest of justice," the court excluded the sums of $6,447.53 and $71,886.68, claimed by Stanly Farm on its 1996 tax

return as deductions respectively for depreciation and bad debt. The court's order provided in this regard that:

19. The depreciation of $6,447.53 . . . represents straight line depreciation or lower than straight line depreciation. Stanly Farm in earlier years did use an accelerated component of depreciation.

20. The bad debts . . . represent[] bad debts from sales in previous years and does not represent cash dollars flowing out of Stanly Farm during 1996.

21. Defendant also received from Stanly Farm in 1996, $540.00 as reimbursement for the use of his personal vehicle for Stanly Farm and $5,400.00 rental income.

. . . .

23. On December 31, 1996, Stanly Farm had on hand a cash balance of $69,301.49. . . .

24. Defendant, as the owner of 51% of the outstanding shares of the capital stock of Stanly Farm, had the authority as to the disbursement of any monies owned by Stanly Farm.

25. Since June 1, 1983, Stanly Farm has never paid dividends to its shareholders.

The court thereupon concluded:

2. The defendant's annual gross income from his operation of Stanly Farm for purposes of calculating child support is $49,206.00 . . . [and the] appropriate level of monthly gross income available to defendant to satisfy his child support obligation is $4,100.00. . . .

. . . .

5. The defendant's monthly obligation for child support . . . is $467.00.

Also at issue at the child support hearing was defendant's 100% ownership of Fun Park, Inc. (Fun Park), a Subchapter-S corporation established by defendant in 1996. Fun Park reported a loss of $43,321.11 in 1996. Defendant's evidence tended to show that $13,347.63 of this figure consisted of the straight line depreciation component. The trial court's order contained no findings or conclusions addressing defendant's income or loss from Fun Park.

Defendant filed timely notice of appeal 25 April 1997.

Initially, defendant argues the trial court improperly (1) "imputed to [him] income of [Stanly Farm] without finding that he had deliberately depressed his income"; (2) determined the "amount of income available to him through [Stanly Farm] by disregarding Stanly Farm's accrual accounting method; and (3) "fail[ed] to deduct from [the] income of [Stanly Farm] the reasonable and necessary expenses of depreciation and bad debt . . . incurred in an accrual accounting tax computation." Each of these contentions is unfounded.

The

ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the father [mother] to meet the needs.

*Pittman v. Pittman*, 114 N.C. App. 808, 810, 443 S.E.2d 96, 97 (1994). The statute governing child support provides that:

[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, [and] accustomed standard of living of the child and the parties . . . .

N.C.G.S. § 50-13.4(c) (Supp. 1997).

Prospective child support is "normally determined under the North Carolina Child Support Guidelines (the Guidelines)," *see* G.S. § 50-13.4(c), which utilize the "gross income" of each parent in calculating the amount of child support required to be payed thereunder by an obligor. Absent a request for variance,

support set consistent with the [G]uidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child for health, education, and maintenance.

*Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991).

Under the Guidelines, gross income is defined as "income from any source," including "income from . . . dividends, . . . pensions, . . . interest, [and] trust income." *North Carolina Child Support Guidelines*, AOC-A-162 (1994). Further, concerning calculation of the gross income of a parent who is self-employed or operates a business, such as defendant herein, the Guidelines provide:

CAUBLE v. CAUBLE

[133 N.C. App. 390 (1999)]

For income from self-employment, rent, royalties, proprietorship of a business, or *joint ownership of a partnership or closely held corporation*, gross income is defined as gross receipts minus ordinary and necessary expenses required for self-employment or business operation.

*Id.* (emphasis added).

Specifically excluded from "ordinary and necessary expenses" are

amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses, investment tax credits, *or any other business expenses determined by the Court to be inappropriate* for determining gross income for purposes of calculating child support.

*Id.* (emphasis added). In addition, the

income and expenses from self-employment or operation of a business should be carefully reviewed to determine an appropriate level of gross income available to the parent to satisfy a child support obligation.

*Id.*

The amount of a trial court's child support award will not be disturbed on appeal except upon a showing of abuse of discretion. *See Burnett v. Wheeler*, 128 N.C. App. 174, 177, 493 S.E.2d 804, 806 (1997). In addition,

[b]ecause the Guidelines vest the trial court with the discretion to disallow the deduction of any business expenses which are inappropriate for the purposes of calculating child support, the trial court's decision . . . to disallow the claimed expenses must be upheld unless it is "manifestly unsupported by reason" and therefore an abuse of discretion.

*Kennedy v. Kennedy*, 107 N.C. App. 695, 700, 421 S.E.2d 795, 798 (1992) (citations omitted).

Moreover,

[t]his Court is bound by the trial court's findings where there is competent evidence to support them. "If different inferences may be drawn from the evidence, [the judge sitting without a

jury] determines which inferences shall be drawn . . .", and the findings are binding on the appellate court.

*Monds v. Monds*, 46 N.C. App. 301, 302, 264 S.E.2d 750, 751 (1980) (bracketed language in original) (citations omitted). In this latter regard, suffice it to state that our examination of the instant record reflects competent evidence in support of each of the trial court's findings, and we thus are "bound by . . . [said] findings." *Id.*

**[1]** Bearing the foregoing in mind, we proceed to consider *ad seriatim* defendant's contentions as to the trial court's treatment of his interest in Stanly Farm. Defendant first maintains the trial court erroneously imputed to him income of Stanly Farm without finding he had deliberately depressed his income. Although defendant correctly asserts that income may be imputed to a party "only if there is a finding that the party deliberately depressed his income," *Burnett*, 128 N.C. at 177, 493 S.E.2d at 806, the trial court herein did not impute income to defendant. Rather, the court's computation of defendant's income included his fifty-one per cent (51%) ownership of Stanly Farm, which accorded him "the authority to make decisions as to the disbursement of any monies owned by Stanly Farm."

This Court has previously held that

setting an amount of child support [is] dependent . . . upon the amount of [defendant's] income and the nature of his *estate*— whether exclusively owned or controlled by defendant.

*Shaw v. Cameron*, 125 N.C. App. 522, 528, 481 S.E.2d 365, 369 (1997). In the instant case, the uncontradicted evidence supports the trial court's finding that the profits of Stanly Farm were available to defendant by virtue of his controlling interest in the closely-held corporation. Thus, notwithstanding defendant's declination to disburse said corporate income, the trial court did not abuse its discretion in allocating to him that amount of income earned by Stanly Farm corresponding to his corporate interest. *See Guidelines* ("[gross] income from [a] . . . closely held corporation [is] . . . gross receipts minus ordinary and necessary expenses"); *see also Barham v. Barham*, 127 N.C. App. 20, 26, 487 S.E.2d 774, 778 (1997) (income of plaintiff owning 50% of corporation included certain cash reserves plaintiff had pledged to a creditor bank for business financing because plaintiff had made the choice to encumber said reserves, and as such the reserves were "available to plaintiff"), *aff'd*, 347 N.C. 570, 494 S.E.2d 763 (1998); *Burnett*, 128 N.C. App. at 177, 493 S.E.2d at 806 (no abuse of discretion by trial court to include in defendant's gross income

retirement accounts, stocks, and land, because court must consider all available sources of income); *cf. Roth v. Roth*, 406 N.W.2d 77, 79 (Minn. App. 1987) (profits of subchapter S Corporation must be attributed to sole shareholder and officer); *Merrill v. Merrill*, 587 N.E.2d 188, 190-91 (Ind. App. 1992) (retained earnings of Subchapter-S corporation constituted profit attributable to defendant as controlling shareholder).

Notwithstanding, defendant points to this Court's opinion in *Taylor v. Taylor*, 118 N.C. App. 356, 455 S.E.2d 442 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996), and argues the trial court should have considered only the income actually received by defendant from Stanly Farm in its computation of his gross income. *Taylor* is inapposite.

First, defendant neglects to consider that the Guidelines were not applicable in *Taylor* and that the court's award of child support therein was derived solely from its conclusions as to "the amount of support necessary to meet the reasonable needs of the child and the relative abilities of the parties to provide that amount." *See id.* at 362, 455 S.E.2d at 447. The trial court herein, however, was obligated to follow the Guidelines which direct computation of an obligor's income based upon the amount of his "taxable income . . . from any source;" which amount may include "potential income if [voluntarily] unemployed or underemployed." *Guidelines.*

More significantly, unlike the instant record, no evidence in *Taylor* indicated the obligor owned a controlling corporate interest whereby he might have directed distribution of corporate profits to his benefit. *See Taylor*, 118 N.C. App. at 358, 455 S.E.2d at 444. Defendant's reliance upon *Taylor* is thus unavailing.

[2] Defendant next asserts the trial court erred in determining the "amount of income available to him through [Stanly Farm]" because the court did not take into consideration the accrual accounting method utilized by Stanly Farm. According to defendant,

> [u]nder the accrual method of accounting, income is accounted for when the right to receive it is created. Thus, it is not the actual receipt of the income but the right to receive which results in an income entry.

Therefore, defendant continues, the "accrual method creates fictional income" and "the trial court can make no determination of the income actually available to the [defendant]."

While it appears no North Carolina authority directly addresses the significance of the accrual method of accounting in relation to an award of child support, accrual accounting figures represent income which is taxable for federal tax purposes, *see* 26 U.S.C. § 446 (1998) and 26 U.S.C. § 61 (1998), and such amounts are thus properly considered as "gross receipts" for purposes of the Guidelines. *See Guidelines* (in determining gross income, "[a]ll income is assumed to be taxable"). Further, in determining an obligor's gross income derived from the latter's interest in a closely held corporation, the trial court may in its discretion allow appropriate adjustments upon "careful[] review[]" of the "income and expenses from self employment." *See id.; see also Lawrence v. Tise,* 107 N.C. App. 140, 147, 419 S.E.2d 176, 181 (1992) ("Guidelines . . . vest the trial court with the discretion to deduct . . . straight line depreciation").

The trial court found that Stanly Farm at the end of its 1996 fiscal year "had on hand a cash balance of $69,301.49," and that "[a]ll income after payment of taxes of Stanly Farm since its inception in June of 1983 have been retained and the accumulated retained earnings . . . [are] $470,676.20." Our careful review of the record reveals that save for evidence of an approximate $19,000.00 bad debt deduction in 1995, defendant introduced no evidence tending to establish that percentage of the annual gross income of Stanly Farm which typically comprised bad debt, *i.e.,* money Stanly Farm would never receive. Absent evidence to the contrary, therefore, use of accrual figures in the trial court's calculations herein was reflective of "an appropriate level of gross income available to the [defendant]," *see Guidelines,* and the trial court's reliance upon such accrual figures was not "manifestly unsupported by reason." *See Kennedy,* 107 N.C. App. at 700, 421 S.E.2d at 798.

[3] Defendant's third contention is that the court

fail[ed] to deduct from [the] income of [Stanly Farm] the reasonable and necessary expenses of depreciation and bad debt incurred in an accrual accounting tax computation.

This argument is also unpersuasive.

Under the Guidelines, the trial court is accorded the discretion to discern those business expenses which are "inappropriate for determining gross income for purposes of calculating child support." *See Guidelines.* In the case *sub judice,* the trial court disallowed "in the interest of justice" deductions of $71,886.68 in bad debt and $6,447.53

in depreciation taken by Stanly Farm in 1996. The court stated in its order that the bad debt "d[id] not represent cash dollars flowing out of Stanly Farm during 1996." The court also noted that

> [s]ince June 1, 1983, Stanly Farm . . . had taxable income each calendar year, with the exception of 1996, which tax return shows a taxable income loss of $1,498.71.

In light of such findings, as well as those specifying the retained earnings and cash on hand of Stanly Farm, we cannot say the trial court's disallowance of Stanley Farm's claimed bad debt and depreciation expenses in computing defendant's gross income from the corporation was "manifestly unsupported by reason." *Kennedy*, 107 N.C. App. at 700, 421 S.E.2d at 798.

[4] In a separate assignment of error, defendant argues the trial court erred by "not including in the income of the [defendant] the losses from the Fun Park corporation." Defendant's final argument has merit.

It is well established that

> [e]ffective appellate review of an order entered by a trial court . . . is largely dependent upon the specificity by which the order's rational is articulated. Evidence must support findings, findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

In the case *sub judice*, the trial court's child support order contains no reference to defendant's 100% ownership interest in Fun Park. *See Shaw*, 125 N.C. App. at 528, 481 S.E.2d at 369 ("[a]ny judgment . . . setting an amount of child support [is] dependent in significant part upon the amount of [defendant's] income and the nature of his *estate*—whether exclusively owned or controlled by defendant"). We note defendant introduced evidence tending to show that Fun Park reported a loss in 1996 of $43,321.11. The business employed an accelerated method of depreciation resulting in a 1996 deduction of $39,725.13, the accelerated component being $26,377.50 and the straight line component totaling $13,347.63. Although straight line

SOUTHERN FURNITURE CO. v. DEP'T OF TRANSP.

[133 N.C. App. 400 (1999)]

depreciation may be excluded from an obligor's gross income in the court's discretion, *see Tise*, 107 N.C. App. at 147, 419 S.E.2d at 181, the trial court's order herein fails to reflect its treatment of the Fun Park figures. For example, considering only the straight line depreciation, the loss of Fun Park in 1996 might have totaled $16,953.61, or $3,595.98 without consideration of depreciation in any amount. As such, "the findings in this regard are not sufficiently specific to indicate to this Court whether the trial court properly applied the Guidelines in computing [defendant's] gross income." *Id.* at 148, 419 S.E.2d 181.

Based on the foregoing, those portions of the trial court's order purporting to compute defendant's gross income and award child support thereon must be reversed. In addition, this matter is remanded for additional findings regarding the income or loss, if any, of defendant from Fun Park as well as re-computation of defendant's gross income and entry of a new child support award in light of such findings. On remand,

> the trial court shall rely upon the existing record, but may in its sole discretion receive such further evidence and further argument from the parties as it deems necessary and appropriate to comply with the instant opinion.

*Heath v. Heath*, 132 N.C. App. 36, 38, 509 S.E.2d 804, 805 (1999).

Affirmed in part; vacated in part and remanded with instructions.

Judges GREENE and TIMMONS-GOODSON concur.