IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-487

No. COA21-595

Filed 19 July 2022

Wake County, No. 15 CVD 2297

JOAN BRITT, Plaintiff,

and

WAKE CO. HUMAN SERVICES, CHILD SUPPORT ENF., Intervenor Plaintiff,

v.

ERVIN BRITT, Defendant.

Appeal by defendant from order entered 30 April 2021 by Judge David Baker in Wake County District Court. Heard in the Court of Appeals 27 April 2022.

*Wake Family Law Group, by Nancy L. Grace and Melanie C. Phillips, for plaintiff-appellee.*

*No brief filed on behalf of intervenor-plaintiff.*

*Gailor Hunt Davis Taylor & Gibbs, PLLC, by Jonathan S. Melton, for defendant-appellant.*

ZACHARY, Judge.

Defendant Ervin Britt appeals from an order requiring him to pay child support to Plaintiff Joan Britt for the support of their two minor children, E.B. and R.B.[1] After careful review, we affirm.

---

[1] We use initials to protect the identities of the juveniles.

## *Background*

Plaintiff and Defendant married in 1999 and separated in 2014. There were two children born of the parties' marriage: E.B., born in 2004, and R.B., born in 2009. On 19 February 2015, Plaintiff filed a complaint seeking, *inter alia*, child support and equitable distribution of the parties' marital assets. On 18 August 2016, Wake County Human Services, Child Support Enforcement filed a motion to intervene on Plaintiff's behalf seeking to sever the child support claim from the collateral claims, which the trial court granted. On 18 August 2017, the trial court entered a temporary child support order, obligating Defendant to pay $375.00 per month in child support, together with $25.00 per month toward Defendant's child support arrears of $7,500.00.

On 1 May 2018, the trial court entered a consent order executed by the parties resolving the equitable distribution claim. The parties agreed that Plaintiff would, *inter alia*, receive a distributive award of $110,000.00, which Defendant would pay to her at the rate of $4,000.00 per month.

The child support claim came on for hearing on 30 April 2021 in Wake County District Court. At trial, Defendant testified regarding his income. Defendant explained that he owned two businesses: Five-O Servicing, LLC, an HVAC company, and D Britt Enterprises, a real estate holding company. He also owned ten rental properties, all of which were encumbered by mortgages at various financial

institutions. Defendant estimated that he made "[l]ess than a hundred bucks" per month from Five-O Servicing; he only worked there one to two hours per week because the company was "in the process of being closed down." He also stated that "D Britt [Enterprises wa]s closed." Defendant testified that he received approximately $7,000.00 per month in rent from his properties, and he "guess[ed]" that after expenses, he had a net rental income of approximately $1,050.00 per month from the properties. He further testified that he did not know from which bank accounts he paid the mortgages on the various properties.

¶ 5    Several financial documents that were admitted at trial related to a third company, DER Enterprises, Inc. Defendant testified that DER belonged to his mother, who owned three rental properties, and that he did not control the company. However, he confirmed that he was a signatory on the two DER bank accounts in order to help his elderly mother. When asked why money was repeatedly transferred from the DER bank accounts to Defendant's accounts, Defendant replied, "I'm sure it was to keep one of the properties from going out of foreclosure." In contrast, Plaintiff testified that she and Defendant originally owned DER, but placed it in Defendant's mother's name to avoid creditors during the 2008 housing market crash. She elaborated: "[T]here was just no way for us to keep up with the bills and the debt we were creating, so -- I mean, we had creditors all the time, so we changed it over to her name so they, you know, couldn't get at us directly . . . ."

¶ 6        Defendant testified that in addition to running his own businesses, he also worked as a "contractor" for Raleigh Air, an HVAC business owned and operated by his live-in girlfriend. At the time of trial, Defendant had worked at Raleigh Air for approximately one year for about "eight hours a day every other day, maybe." Although he was merely a "contractor" with Raleigh Air, Defendant transferred his HVAC license from his company, Five-O Servicing, to Raleigh Air to expand Raleigh Air's offered services. Moreover, Defendant contributed to Raleigh Air's advertising campaigns and interviewed candidates for employment with the company. Defendant maintained that he was not paid for this work; rather, his employment with Raleigh Air "started as a loan type of situation," and he worked for the company in an effort "to pay [it] back and make goodwill[.]" While Defendant conceded that money was deposited monthly into his personal bank account from the Raleigh Air bank account, he testified that this was not income to him. Instead, the money was intended to reimburse him for his girlfriend's portion of the mortgage payment on their shared residence. Defendant also stated that he has used a Raleigh Air credit card to cover his personal expenses, such as lunches, without advance authorization from the company. On one occasion, he also used the card to purchase airline tickets to Washington for himself and his children.

¶ 7        At trial, Plaintiff's counsel questioned Defendant regarding the itemized lists that Defendant created purporting to track his business expenses. Defendant

conceded that a list of Five-O Servicing's expenses for the year 2020 was inaccurate, in that it listed the salaries for employees who were actually contractors for Raleigh Air; he confirmed that the list contained the salaries "in order to claim th[ose] expenses for Five-O[.]" Regarding another itemized list of his expenses from 1 January through 2 April 2021, Defendant initially asserted that the list solely comprised expenses "for the apartments." However, the list also contained an expense explicitly related to DER. When he was asked about this expense, Defendant responded that "[i]t could be anything[,]" and suggested that perhaps he had performed HVAC services for DER.

¶ 8        Other items on Defendant's list of business expenses from 1 January through 2 April 2021 included $962.91 from 2020, which Defendant confirmed were personal expenses; the nearly $4,000.00 mortgage payment on Defendant's personal residence, which he contended was a business expense; and over $13,000.00 in "separation" expenses, which Defendant conceded should not have been included as a business expense. Defendant acknowledged that this list contained "some errors" and confirmed that a qualified accounting professional had not reviewed it.

¶ 9        Plaintiff also introduced bank statements for the two DER accounts. These statements evidenced several mortgage payments for various properties, but did not indicate the amount of each payment that was attributable to principal versus the amount attributable to interest. Additionally, despite Defendant's assertion that he

was a signatory on the DER accounts simply "to help [his mother] with her bills[,]" Defendant could not describe how he paid the mortgages on his mother's properties, stating only that the mortgage payment process was "automatic." Regarding his ability to pay the mortgages on his own properties, Defendant explained: "The apartments bring me money; the mortgages get paid." Furthermore, Defendant could not articulate which expenses were satisfied with the transfers to the DER accounts. Concerning the January 2020 deposits from the Raleigh Air bank account into a DER account, Defendant testified that he "assum[ed] there's something that went on that [his mother] needed money for the apartments or something."

¶ 10    Before entering its order, the trial court orally rendered its ruling. Addressing Defendant with regard to his testimony concerning his income and expenses, the trial court stated:

> [T]he Court has wrestled with how to calculate your income. . . . [T]he deposits into the accounts, that's the one thing that this Court can be certain of. However, there's no evidence of what the expenses are associated with any of your business enterprises. And I'll just be honest with you, I don't think I've found myself in a situation where I declare a witness just completely not credible, but it appears to the Court that you've gone to great lengths to portray your income at an artificial low and that your testimony was largely evasive with the purpose of misleading the Court about your stake, your role and interest particularly in the business of Raleigh Air.
>
> But this Court will find that the bank account . . . for DER Enterprises . . . is an account that [Defendant] has access

> to, that he utilizes for -- that he has access to and that he utilizes for his personal and business expenses. And although he's testified that it's his mother's account, that in light of the deposits and withdrawals that indicate that [Defendant] is largely in control of this account and that it's appropriate, fair and just for this to be included in the calculation of his income.
>
> I don't really even know where to start with the contentions about your role in Raleigh Air. You're all over the place. And when I sit here in this capacity, representing the Court of Justice, it's really appalling when someone goes to the lengths that you've gone . . . to mislead the Court. I want to be clear about that. You haven't fooled anyone.

In light of Defendant's "evasive" testimony and Plaintiff's testimony that the parties "shifted and diverted their holdings with DER" to "avoid[ ] debt collection and debt collectors," the trial court further found that Defendant "ha[d] done likewise" with his assets in Raleigh Air in an attempt to avoid his child support obligation.

¶ 11        In its order entered 30 April 2021, the trial court found that Defendant was self-employed in "HVAC + Real Estate Rentals[,]" and that he owned multiple businesses. The court determined that Defendant had a monthly income of $24,085.00 based on evidence presented at trial of the monthly deposits into his various bank accounts, and the court imputed income of $3,333.00 per month to Plaintiff. The trial court accordingly ordered, *inter alia*, that Defendant (1) contribute $2,040.23 per month to the support of the parties' minor children beginning 1 May 2021, in accordance with the North Carolina Child Support Guidelines; and (2) pay

his child support arrears of $6,059.00 to Plaintiff in full by 30 May 2021. Defendant timely filed notice of appeal.

## *Discussion*

¶ 12      On appeal, Defendant argues that the trial court erred by failing to (1) deduct the "ordinary and necessary expenses" from Defendant's self-employment business receipts in its calculation of his monthly gross income; (2) provide a rationale as to why the court did not deduct the expenses; and (3) deduct Defendant's temporary child support and equitable distribution payments from his monthly gross income in its calculation of his monthly adjusted gross income.

### *I.*      *Standard of Review*

¶ 13      "Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Jonna v. Yaramada*, 273 N.C. App. 93, 100, 848 S.E.2d 33, 41 (2020) (citation omitted). "A judge is subject to reversal for abuse of discretion only upon a showing by a litigant that the challenged actions are manifestly unsupported by reason." *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985) (citation omitted). Because the North Carolina Child Support Guidelines vest a trial court "with the discretion to disallow the deduction of any business expenses which are inappropriate for the purposes of calculating child support, the trial court's decision to disallow the claimed expenses must be upheld unless it is

'manifestly unsupported by reason' and therefore an abuse of discretion." *Cauble v. Cauble*, 133 N.C. App. 390, 395, 515 S.E.2d 708, 712 (1999) (citation omitted).

¶ 14        "[U]nchallenged findings of fact are binding on appeal." *Kleoudis v. Kleoudis*, 271 N.C. App. 35, 39, 843 S.E.2d 277, 281 (2020) (citation omitted). "Furthermore, evidentiary issues concerning credibility, contradictions, and discrepancies are for the trial court—as the fact-finder—to resolve and, therefore, the trial court's findings of fact are conclusive on appeal if there is competent evidence to support them despite the existence of evidence that might support a contrary finding." *Sergeef v. Sergeef*, 250 N.C. App. 404, 406–07, 792 S.E.2d 192, 194 (2016) (citation and internal quotation marks omitted).

## II.   *Analysis*

¶ 15        Defendant first argues that the trial court erred by declining to deduct the "ordinary and necessary expenses" from Defendant's business receipts when calculating his monthly gross income for child support purposes. Specifically, he asserts that the court erroneously failed to deduct the recurring "withdrawals for at least 5 mortgages and a pest and termite service[.]" We disagree.

¶ 16        "The calculation of child support is governed by North Carolina Child Support Guidelines established by the Conference of Chief District Court Judges." *Craven Cty. v. Hageb*, 277 N.C. App. 586, 2021-NCCOA-231, ¶ 12 (citation omitted). The Guidelines define "gross income" as "a parent's actual gross income from any source,

including but not limited to income from employment or self-employment . . . , ownership or operation of a business, partnership, or corporation, [or] rental of property[.]" N.C. Child Support Guidelines, at 3 (2019).

¶ 17        The actual gross income derived from self-employment is calculated by subtracting the "ordinary and necessary expenses required for self-employment or business operation" from the gross receipts. *Id.* " 'Ordinary and necessary expenses,' although not specifically defined in the Guidelines, include expenses for repairs, property management and leasing fees, real estate taxes, insurance, and mortgage interest. Mortgage principal payments, however, are not an 'ordinary and necessary expense' within the meaning of the Guidelines." *Lawrence v. Tise*, 107 N.C. App. 140, 149, 419 S.E.2d 176, 182 (1992).

¶ 18        Here, given the proffered evidence of Defendant's business expenses—or lack thereof—the trial court did not err by declining to deduct any expenses from Defendant's business receipts in its calculation of Defendant's gross income for child support purposes. The transcript supports the trial court's finding that there was "no evidence of [which] expenses [were] associated with any of [Defendant's] business enterprises." Defendant did not introduce any documentation of his income and could only provide a rough estimate of the amount that he derived from his apartment rentals and other businesses; he did not provide any recent tax returns, because he had not filed an income tax return since 2017; he testified that he was unsure how

the apartment mortgages were paid; and his itemized list of business expenses included some which were clearly illegitimate, such as Defendant's home mortgage payment and Defendant's "separation" expenses, which he conceded were not business expenses.

¶ 19        Moreover, although two exhibits listed the pest control expense, Defendant failed to provide sufficient credible information concerning the expense to permit its consideration by the trial court. The itemized list of expenses from 1 January through 2 April 2021 contained a $140.00 expense for "pest" under "office" expenses, but the trial court, as fact-finder, was not required to accept this bare assertion at face value, in light of its determination regarding Defendant's lack of credibility. *See Sergeef*, 250 N.C. App. at 406–07, 792 S.E.2d at 194.

¶ 20        Indeed, the court found that Defendant was not credible, as he "was largely evasive [in his testimony] with the purpose of misleading" the court. Defendant does not challenge this finding, and thus, it is binding on appeal. *Kleoudis*, 271 N.C. App. at 39, 843 S.E.2d at 281. Further, Defendant conceded at trial that the list of expenses contained errors, and that a qualified accounting professional had not reviewed it. And while the bank statements for one of the DER accounts also listed a monthly pest control expense of $70.00, Defendant failed to indicate whether that expense was incurred for his or his mother's rental properties, or for one of their personal residences. Therefore, because the trial court found that Defendant offered no reliable

evidence as to the pest control expense—a determination supported by the court's binding finding concerning the incredibility of Defendant's testimony—the trial court appropriately exercised its discretion by declining to consider pest control expense as an ordinary and necessary business expense. *See Cauble*, 133 N.C. App. at 395, 515 S.E.2d at 712.

¶ 21        Regarding the interest portion of the mortgage payments on Defendant's rental properties, Defendant presented insufficient evidence to warrant its inclusion as a business expense. Although Defendant testified that the monthly mortgage payments on some of his rental properties, his mother's residence, and her rental properties were paid from the DER accounts, he could not identify the specific properties associated with those mortgage payments. With this incomplete picture of Defendant's expenses, the trial court could not adequately distinguish whether the proffered expenses were Defendant's personal expenses or expenses associated with Defendant's business or his mother's business. Furthermore, even if Defendant had identified the mortgage payments which were attributable to his rental properties, full mortgage payments do not constitute "ordinary and necessary expenses" for the purpose of calculating child support. *Lawrence*, 107 N.C. App. at 149, 419 S.E.2d at 182 ("Mortgage principal payments . . . are not an 'ordinary and necessary expense' within the meaning of the Guidelines."). Additionally, Defendant did not provide any evidence regarding the "expenses for repairs, property management and leasing fees,

real estate taxes, insurance, and mortgage interest[,]" *id.,* or any other "ordinary and necessary expenses required for self-employment or business operation[,]" N.C. Child Support Guidelines, at 3.

¶ 22    Accordingly, the trial court did not abuse its discretion in finding that there was no competent evidence of Defendant's "ordinary and necessary expenses[,]" *id.*, and appropriately declined to deduct the pest control expense and the mortgage payments from Defendant's business receipts in its calculation of Defendant's gross income for child support purposes, *see Cauble*, 133 N.C. App. at 395, 515 S.E.2d at 712.

¶ 23    Defendant next asserts that the trial court was "required to make findings *why* the expenses [Defendant] testified about and that were admitted into evidence were not considered in the calculation of his income." In support of this contention, Defendant cites *Thomas v. Burgett*, 265 N.C. App. 364, 852 S.E.2d 353 (2019). However, as explained below, Defendant's reliance on *Thomas* is misplaced.

¶ 24    In *Thomas*, this Court vacated in part and remanded a child support order in which the trial court failed to articulate its reason for excluding particular expenses related to the defendant's rental property. 265 N.C. App. at 368, 852 S.E.2d at 357. The Court explained that "even if the trial court chose not to find [the defendant]'s evidence credible at all and therefore did not factor it into its computation, its findings d[id] not provide its rationale for doing so." *Id.* (citation and internal quotation marks

omitted). The Court determined that vacatur and remand were necessary because "[w]ithout any evidence indicating the trial court's contemplation of those expenses, we do not have enough findings to conduct adequate review." *Id.*

¶ 25          In the case at bar, the trial court sufficiently provided a rationale for not factoring Defendant's proffered evidence of pest control expense into its calculation of his gross income: it did not find the evidence to be credible. And, unlike the trial court in *Thomas*, the court here articulated at trial *why* it did not find Defendant's evidence to be credible: namely, that Defendant's testimony "was largely evasive with the purpose of misleading" the court, a sentiment reiterated in the court's written finding that Defendant's "testimony was largely evasive with the purpose of misleading the court as to his income[.]" This finding, unchallenged by Defendant, is binding on appeal. *Kleoudis*, 271 N.C. App. at 39, 843 S.E.2d at 281. Moreover, because Defendant did not offer any evidence of the interest portion of the mortgage payments on his rental properties, the court did not need to provide a rationale for not considering the interest as a business expense, as there was no evidence for the court to consider.

¶ 26          Thus, given that the trial court provided a rationale for not accepting Defendant's evidence of any pest control expense—that Defendant's evasive and misleading testimony undermined the credibility of his proffered evidence—and that the court required no rationale for declining to consider evidence of the mortgage-

interest expense where Defendant offered none, we conclude that the court provided sufficient findings of fact in its order to enable appellate review. *See Thomas*, 265 N.C. App. at 368, 852 S.E.2d at 357. Defendant's argument accordingly fails.

¶ 27        Finally, citing no authority, Defendant contends that the trial court erred in calculating his monthly adjusted gross income by failing to deduct Defendant's temporary child support and equitable distribution payments from his monthly gross income. This argument is manifestly without merit.

¶ 28        The Guidelines prescribe particular instances in which a parent is entitled to receive a deduction from his or her monthly gross income for the purpose of calculating child support: (1) where a parent is responsible for child support payments on behalf of a child other than the child for whom support is sought in the present action; and (2) where a parent is responsible for the financial care of "his or her natural or adopted children who currently reside with the parent (other than children for whom child support is being determined in the pending action)." N.C. Child Support Guidelines, at 4.

¶ 29        In the instant case, the trial court did not abuse its discretion by declining to deduct Defendant's temporary child support and equitable distribution payments from his monthly gross income for child support purposes, in that the Guidelines do not permit deductions from a party's gross income for such payments. *See id.*; *see also*

*Cauble,* 133 N.C. App. at 395, 515 S.E.2d at 712. Defendant's argument to the contrary is overruled.

## *Conclusion*

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in calculating Defendant's monthly gross income and monthly adjusted gross income, and that the trial court provided sufficient findings to support its determinations. Accordingly, we affirm the child support order.

AFFIRMED.

Judges DILLON and CARPENTER concur.