STATE OF NORTH CAROLINA ON BEHALF OF: CHARLOTTE J. MIDGETT, PLAINTIFF
v. GARY W. MIDGETT, DEFENDANT

No. COA08-1198

(Filed 18 August 2009)

**Child Support, Custody, and Visitation— child support—defendant's capacity to earn—findings not sufficient**

The trial court erred in a child support action by considering defendant's capacity to earn in calculating his gross monthly income without the requisite findings of fact. The trial court appeared to rely solely on plaintiff's testimony as to what defendant purportedly earned on average from commercial fishing and towing and crushing cars over the entire course of the marriage rather than in one or two prior years, and made no findings or conclusions about its decision to halve the figures provided by plaintiff.

Appeal by defendant from order entered 3 June 2008 by Judge J. Carlton Cole in Dare County District Court. Heard in the Court of Appeals 11 March 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Gerald K. Robbins, for plaintiff-appellee.*

*Frank P. Hiner, IV, for defendant-appellant.*

HUNTER, Robert C., Judge.

Gary W. Midgett ("defendant") appeals from an "Order to Establish Child Support" entered 3 June 2008 by Judge J. Carlton Cole in Dare County District Court, which required him to, *inter alia*, pay $1164.00 per month in ongoing child support for his three minor children. After careful review, we reverse and remand.

STATE ex rel. MIDGETT v. MIDGETT

[199 N.C. App. 202 (2009)]

## I. Background

Defendant and Charlotte J. Midgett ("plaintiff") married on 14 October 1995, separated on 17 November 2007, and have three minor children (the "children").

On 14 March 2008, the Dare County Child Support Enforcement Agency filed a complaint seeking child support from defendant on behalf of plaintiff. On 25 April 2008, defendant filed an answer in which he, *inter alia*, admitted that he was the father of the children and asked the court "to establish a reasonable amount of child support . . . ."

On 30 May 2008, a hearing was conducted to establish the amount of child support. At the hearing, Allison Creef ("Ms. Creef"), a Dare County child support enforcement agent assigned to plaintiff's case, testified that plaintiff told her that "on average[, defendant's] normal yearly income" from commercial fishing was "about" $12,000.00, or $1,000.00 per month. Ms. Creef further testified that plaintiff told her that defendant earned about $15,000.00 per year, or $1,125.00 per month, from towing and crushing cars. Ms. Creef stated that these figures were based solely on plaintiff's statements and were not corroborated by any financial records.

Plaintiff testified that defendant had been engaging in commercial fishing for "[h]is whole life, since he was a small child with his uncle." She further testified that she told Ms. Creef that $12,000.00 per year was "[a]bout the average" amount that defendant earned yearly from commercial fishing and that she arrived at this figure based on deposits that defendant had made to their joint checking account over the course of their marriage. The only financial documentation produced at the hearing regarding defendant's commercial fishing income was: (1) a 2005 Form 1099 from O'Neal's Sea Harvest for $5,667.38; (2) a 2005 Form 1099 from Austin Fish Company for $3,829.40; and (3) a 2005 tax return, which listed defendant's gross receipts from commercial fishing as $9,496.00 and an actual profit of $3,296.00 after subtracting out various expenses.[1] Plaintiff agreed that the expenses that were subtracted to arrive at the $3,296.00 profit listed in the 2005 tax return were "reasonable expenses of the business as far as [she] underst[ood.]" Plaintiff admitted that she had no knowledge of whether defendant earned any money from commercial fishing in 2008.

---

1. None of these documents are contained in the record on appeal.

Plaintiff testified that defendant had been earning income from towing and crushing cars for over twenty years as part of a family business and that defendant was compensated for this work via cash or a check apart from his regular paycheck. She stated that she arrived at the $15,000.00 average figure based on some checks she had seen and bank deposits that defendant had made to their joint checking account over the course of their marriage. Plaintiff testified that she believed that defendant had been earning money towing and crushing cars in 2008 based on "pictures [the] children took when they went for a visit in March." She also stated that she had deposit records from 2007; however, neither the pictures nor the 2007 deposit records were offered into evidence. In fact, no financial documentation pertaining to defendant's income from towing and crushing cars from 2008 or any other year was produced at the hearing.

Defendant testified that he earned a $1,200.00 biweekly salary from his regular employment at Island Convenience, Inc., which is a business owned by defendant's aunt and cousins. He stated that he typically works there from 8 a.m. until 6 p.m. or 7 p.m.

Defendant admitted that, in past years, he had engaged in commercial fishing with his family to earn income, but stated that he had not engaged in any commercial fishing in 2008, that commercial fishing had become "a thing of the past[,]" and that it was no longer an activity one could "rely on an income out of." He further testified that he maybe earned a couple thousand dollars from commercial fishing in 2006 and 2007 and that he did plan to fish in 2008 "[i]f [he] ha[d] nothing else to do and ha[d] the time . . . ."

Defendant testified that he tows and crushes cars for the family business and that he is paid via cash or a check, which is separate from his regular paycheck. He stated that the income he derives from this activity decreased significantly in recent years following his uncle's death and due to increased competition. Defendant testified that prior to his uncle's death and the increased competition, he earned $7,000.00 or $8,000.00 a year from towing and crushing cars, but in recent years, he maybe earned $500.00 to $1,000.00 per year. Defendant admitted that, one or two months prior to the 30 May 2008 hearing, he had received approximately $500.00 from towing and crushing cars, but he stated that this was all he had earned in 2008 and that it was not a monthly source of income for him.

At the end of the hearing, the trial court stated that it found plaintiff's testimony regarding defendant's income from commercial

fishing and from towing and crushing cars to be "credible," but halved the $12,000.00 and $15,000.00 yearly figures to $6,000.00 and $7,500.00 and included these amounts in calculating defendant's gross monthly income in order to determine defendant's overall child support obligation.

Following the 30 May 2008 hearing, the trial court entered an "Order to Establish Child Support" on 3 June 2008, stating that "[t]he child support in [the] action" was based upon the North Carolina Child Support Guidelines, 2009 Ann. R. N.C. 41 (Rev. Oct. 2006) ("the Guidelines"). In this order, the trial court calculated defendant's "gross monthly income" to be "approximately" $3,725.00, based on: (1) a $1,200.00 biweekly salary from his regular employment with Island Convenience, Inc.; (2) $500.00 per month from commercial fishing; and (3) $625.00 per month for towing and crushing cars. The trial court ordered defendant to, *inter alia*, pay $1,164.00 per month in ongoing child support beginning on 1 June 2008. Defendant appeals.

## II. Analysis

On appeal, defendant asserts the trial court erred in its calculations as to: (1) the income he receives from commercial fishing; (2) the income he receives from towing and crushing cars; (3) his total gross monthly income; and (4) his overall child support obligation, as it was based on, *inter alia*, the purportedly erroneous gross monthly income calculation. Specifically, defendant argues that there was no competent evidence to support the trial court's finding of fact that, at the time the child support order was entered, his monthly income from commercial fishing was $500.00 and his monthly income from towing and crushing cars was $625.00. As such, defendant contends that the only way that the trial court could attribute this income to him was by utilizing his earning capacity, which the trial court could not do absent the requisite findings of bad faith or deliberate depression of income. Because the trial court did not make such findings, defendant contends his case must be reversed and remanded for further proceedings. As discussed *infra*, we agree.

### A. Standard of Review

The standard of review of a trial court's determination of child support is abuse of discretion. *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005). "The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions

that underlie it, represent a correct application of the law." *Id.* "Effective appellate review of an order entered by a trial court sitting without a jury is largely dependent upon the specificity by which the order's rationale is articulated." *Coble v. Coble,* 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

> Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken by the trial judge, in logical sequence; each link in the chain of reasoning must appear in the order itself. Where there is a gap, it cannot be determined on appeal whether the trial court correctly exercised its function to find the facts and apply the law thereto.

*Id.* This Court's review of a trial court's findings of fact is limited to "whether there is competent evidence to support the findings of fact, despite the fact that different inferences may be drawn from the evidence." *Hodges v. Hodges,* 147 N.C. App. 478, 482-83, 556 S.E.2d 7, 10 (2001).

> To support the conclusions of law, the judge also must make specific findings of fact to enable this Court to determine whether the trial court's conclusions of law are supported by the evidence. "Such findings are necessary to an appellate court's determination of whether the judge's order is sufficiently supported by competent evidence."

*State ex rel. Williams v. Williams,* 179 N.C. App. 838, 839, 635 S.E.2d 495, 497 (2006) (citation omitted) (quoting *Plott v. Plott,* 313 N.C. 63, 69, 326 S.E.2d 863, 867 (1985)). "Because the determination of gross income requires the application of fixed rules of law, it is properly denominated a conclusion of law rather than a finding of fact." *Lawrence v. Tise,* 107 N.C. App. 140, 145, n.1 419 S.E.2d 176, 179, n.1 (1992) (internal quotation marks omitted) (quoting *Quick v. Quick,* 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982)).

### B. "Income" Calculations

The Child Support Guidelines define " '[i]ncome' " as:

> a parent's actual gross income from any source, including but not limited to income from employment or self-employment (salaries, wages, commissions, bonuses, dividends, severance pay, etc.), ownership or operation of a business, partnership, or corporation, rental of property, retirement or pensions, interest, trusts,

annuities, capital gains, social security benefits, workers compensation benefits, unemployment insurance benefits, disability pay and insurance benefits, gifts, prizes and alimony or maintenance received from persons other than the parties to the instant action. When income is received on an irregular, non-recurring, or one-time basis, the court may average or pro-rate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support.

Guidelines, 2009 Ann. R. N.C. 43. "It is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified." *Ellis v. Ellis*, 126 N.C. App. 362, 364, 485 S.E.2d 82, 83 (1997). "Under the Child Support Guidelines, [c]hild support calculations . . . are based on the parents' *current incomes at the time the order is entered*." *Holland v. Holland*, 169 N.C. App. 564, 567, 610 S.E.2d 231, 234 (2005) (alterations in original) (citation and internal quotation marks omitted). "[T]he [c]ourt must determine [the parent's] gross income as of the time the child support order was originally entered, not as of the time of remand nor on the basis of [the parent's] average monthly gross income over the years preceding the original trial." *Tise*, 107 N.C. App. at 149, 419 S.E.2d at 182.

However, "a party's capacity to earn income may become the basis of an award if it is found that the party deliberately depressed its income or otherwise acted in deliberate disregard of the obligation to provide reasonable support for the child." *Askew v. Askew*, 119 N.C. App. 242, 244-45, 458 S.E.2d 217, 219 (1995). "It is clear, however, that '[b]efore the earnings capacity rule is imposed, it must be shown that [the party's] actions which reduced his income were not taken in good faith.' " *Ellis*, 126 N.C. App. at 364, 485 S.E.2d at 83 (alterations in original) (quoting *Askew*, 119 N.C. App. at 245, 458 S.E.2d at 219).

As stated *supra*, here, the trial court stated that it found plaintiff's testimony regarding the income defendant respectively receives from commercial fishing and towing and crushing cars to be "credible[.]" However, the court made no additional findings of fact regarding defendant's income from these activities. Plaintiff's testimony did not address defendant's income from these activities at the time the order was entered on 3 June 2008. In fact, after carefully examining the record on appeal, we can find no evidence before the

trial court that defendant had earned any income from commercial fishing in 2008, and the only evidence before the trial court as to the income defendant earned from towing and crushing cars in 2008 was defendant's testimony that he had earned $500.00 one or two months prior to the 30 May 2008 hearing.

Recent decisions by this Court, however, suggest that a trial court may permissibly utilize a parent's income from prior years to calculate the parent's gross monthly income for child support purposes. In *Diehl v. Diehl*, 177 N.C. App. 642, 630 S.E.2d 25 (2006), this Court determined that the plaintiff had failed to preserve his challenge to "the trial court's use of an average of [the plaintiff's] monthly gross incomes in 2001 and 2002 as a basis for finding [the plaintiff's] monthly gross income for 2003 . . . ." *Id.* at 649-50, 630 S.E.2d at 30. However, this Court went on to state that assuming, *arguendo*, that the plaintiff had preserved this argument, competent evidence existed to support the trial court's findings that the plaintiff's documentation as to his 2003 income was inadequate and " 'highly unreliable[.]' " *Id.* at 650, 630 S.E.2d at 30. "Given the unreliability of [the plaintiff's] documentation," this Court stated that it could not conclude "that the trial court abused its discretion by averaging [the plaintiff's] income from his two prior tax returns to arrive at his 2003 income." *Id.*

Later, in *Hartsell v. Hartsell*, 189 N.C. App. 65, 657 S.E.2d 724 (2008), this Court determined that the trial court did not err in determining that the plaintiff "could continue to earn at least $2,500 a month from [his] grading business [because it] was reasonably based on [the] findings of fact regarding [the p]laintiff's actual earnings during the year prior to the hearing." *Id.* at 79, 657 S.E.2d at 732. In *Hartsell*, the trial court made extensive findings of fact to support its conclusions, and said findings were unchallenged and binding on appeal. *Id.* at 77-78, 657 S.E.2d at 731-32. In addition, as in the instant case, the plaintiff asserted that the income he earned in prior years was greater than the income he could currently earn. *Id.* at 79, 657 S.E.2d at 732. This Court disagreed and concluded that the trial court's findings of fact demonstrated that the court took into account " 'the fact that [the] plaintiff's full-time job responsibilities had changed, that [the] plaintiff's previous income was based upon his having a crew of full-time workers in addition to himself, and that there [might] be periods when work was unavailable to [the plaintiff].' " *Id.* Finally, this Court noted that the trial court had specifically found that the plaintiff had not provided income tax returns for 2004

or 2005, and citing *Diehl* in support, concluded that the trial court had not utilized the plaintiff's earning capacity to reach its income determination. *Id.* at 78-79, 657 S.E.2d at 732.

However, in the instant case: (1) though it appears from the transcript that defendant did not produce his 2006 or 2007 tax returns at the 30 May 2008 hearing, there are no findings that defendant failed to produce these documents or that the financial documentation that defendant produced was inadequate and unreliable; (2) there are no findings that the court was utilizing financial documentation, such as tax returns from prior years, to arrive at its findings/conclusions as to defendant's income; (3) the court did not make extensive findings of fact to support its conclusion as to defendant's gross monthly income, nor did it make any findings regarding defendant's current ability to continue to generate the income he earned in prior years; and (4) the financial documentation from prior years, which was produced, i.e., the 2005 tax return and the two 2005 Form 1099's, does not support the trial court's findings/conclusions that defendant earned $500.00 per month from commercial fishing and $625.00 per month from towing and crushing cars. Rather, the trial court appeared to rely solely on plaintiff's testimony as to what defendant purportedly earned on average from commercial fishing and towing and crushing cars over the entire course of the marriage, not over one or two prior years as in *Diehl* and *Hartsell*. Finally, the trial court made absolutely no findings or conclusions regarding its decision to halve the figures provided by plaintiff.

In *Williams*, this Court noted that the trial court had "concluded as a matter of law [that the] defendant's monthly gross income [was] $3,200.00 . . . based on the . . . finding of fact that 'the most believable statement of income for the [d]efendant [was] the one submitted under oath to the Bankruptcy Court . . . .' " *Williams*, 179 N.C. App. at 841, 635 S.E.2d at 497. Because this statement of income had been filed eighteen months prior to the date "when the trial court's child support order was entered[,]" this Court concluded that "[in] calculating [the] defendant's monthly gross income[,] the trial court used [the defendant's] capacity to earn as the basis for its calculation." *Id.* (internal quotation marks omitted). Furthermore, because the trial court's order lacked the necessary findings of bad faith or deliberate suppression of income, this Court determined that "the trial court erred by considering [the] defendant's capacity to earn, in computing [the defendant's] gross monthly income . . . ." *Id.* at 841, 635 S.E.2d at 498 (internal quotation marks omitted).

Similarly, here, we conclude that the trial court erred by considering defendant's capacity to earn in calculating his gross monthly income without the requisite findings of fact. In addition, the trial court's order lacks sufficient findings to support its legal conclusions, which further frustrates this Court's review. Consequently, we reverse the trial court's order and remand this case to the trial court for an appropriate determination of defendant's monthly gross income, at which time either party may offer additional evidence on this issue. In this regard, we note that as to "[i]ncome [v]erification[,]" the Child Support Guidelines provide, in pertinent part:

> Income statements of the parents should be verified through documentation of both current and past income. Suitable documentation of current earnings (at least one full month) includes pay stubs, employer statements, or business receipts and expenses, if self-employed. Documentation of current income must be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

Guidelines, 2009 Ann. R. N.C. 43. We further note that if defendant fails to comply with this provision, "[s]anctions may be imposed . . . on the motion of [plaintiff] or by the court on its own motion." *Id.*

Reversed and remanded.

Judges CALABRIA and HUNTER, Robert N., Jr. concur.