IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-706

No. COA21-774

Filed 1 November 2022

Cabarrus County, No. 08-CVD-4467

KATHERINE GLEDHILL CASH (McGEE), Plaintiff,

v.

MATTHEW CASH, Defendant.

Appeal by defendant from order entered 21 April 2021 by Judge Juanita Boger-Allen in District Court, Cabarrus County. Heard in the Court of Appeals 23 August 2022.

*Plumides, Romano & Johnson, P.C., by Richard B. Johnson, for defendant-appellant.*

*No brief for plaintiff-appellee.*

STROUD, Chief Judge.

¶ 1　　Father Matthew Cash appeals from an order modifying child support to Mother Katherine Cash (now McGee). Because the trial court had competent evidence to support the challenged Findings of Facts and because it did not abuse its discretion in imputing income to Father based on a determination he acted in bad faith, we affirm.

**I.　Background**

¶ 2    Mother and Father married in 2007, and they had a child born in 2008. Also in 2008, they separated and were later divorced. On 10 December 2008, Mother filed a Complaint seeking, *inter alia,* child support. In September 2011, Mother and Father entered a "Child Support Consent Order."[1] In the consent order, Father was ordered to pay Mother $50 per month in child support plus an additional $50 per month towards $5,292 in child support arrears, and they were each to pay one half of the child's medical expenses with Mother covering the first $250 each year. At some later point, the parties voluntarily and informally agreed Father would increase his child support payments to $350 per month. Father continued making those payments through the time the trial court entered the order on appeal, the "Amended Order for Modification of Permanent Child Support" (hereinafter "Child Support Modification Order"),[2] which ruled on Mother's motion for "Modification of Child Support and Attorney Fees"[3] filed 27 August 2020. (Capitalization altered.)

¶ 3    In the Modification Motion filed in August 2020, Mother alleged "there has

[1] This is the first child support order in our record. While the record does not definitively explain the long gap between the separation and Complaint in 2008 and the order in 2011, child custody was not settled until 12 February 2010, which could account for at least part of the delay since Mother was granted primary legal and physical custody.
[2] A few days after entering an "Order for Modification of Permanent Child Support," the trial court entered an "Amended Order for Modification of Permanent Child Support." (Capitalization altered.) Since Father appeals from the Amended Order, *i.e.,* the "Child Support Modification Order," we focus on that order.
[3] The attorney fees portion of the motion is not at issue in this appeal. In the Child Support Modification Order, the trial court explained Mother "did not offer any evidence to support an award of attorney's fees" and thus denied her request.

been a substantial and material change in the circumstances since the" September 2011 order based on three grounds: the existing order was "more than three (3) years old and there has been at least a 15% change in the amount owed under the North Carolina Child Support Guidelines"; Mother had two children since entry of the previous order; and Father's "income has increased significantly."

¶ 4 Father filed a "Financial Affidavit" on 22 January 2021 in which he indicated he was employed by Huntley Brothers Company and made approximately $99,000 in adjusted gross income in 2019 and a current monthly gross income of approximately $9,800. (Capitalization altered.) Father had been employed with Huntley Brothers "for seven or eight years." On 12 March 2021—five days before the scheduled hearing on Mother's motion to modify child support—Father filed an "Amended Financial Affidavit" indicating he had been laid off from Huntley Brothers and as a result his monthly gross income was reduced to $0. (Capitalization altered.)

¶ 5 On 17 March 2021, the trial court held a hearing on Mother's Modification Motion. At the outset of the hearing, Mother's attorney raised before the trial court that Mother had not received updated income verification and financial information from Father. Mother's attorney argued "[t]his was an ongoing discovery issue" because "it was all part of the Request for the Production of Documents" and the trial court could "take that in consideration when rendering [its] judgment." Father's attorney responded they had "provide[d] updated statements prior to the last time"

the motion was scheduled for a hearing, in late January 2021. The trial court thanked the parties and then moved on to ask about pretrial motions.

¶ 6 For the remainder of the hearing, three witnesses testified—Father, Mother, and David Huntley, one of the owners of Huntley Brothers. Father testified about: his current child support obligation; his previous employment with Huntley Brothers and when the previous child support order was entered including his income during those times; a masonry business he started in August 2020 including his recent jobs for the business as well as the deposits, debits, withdrawals, checks, and balance of the associated business banking account and credit card; and his plan to focus on his own masonry business instead of seeking new employment. The discussion of his time with Huntley Brothers included some questions about income verification documents Father provided during discovery, and Father testified he had not provided a 2020 W-2 or a paystub since 2020. Similarly, during the discussion of Father's masonry business, Mother's attorney asked Father about discovery and verification documents related to the business's income and expenses, and Father testified he had "been asked to provide everything" and "didn't – haven't just not done it, just been asked." Father later clarified he had not provided any relevant business documents past November 2020.

¶ 7 Mother testified about: the previous child support order and amount as well as her motion for modification; her income including supporting documentation and

account statements; her family unit including her husband and other children; and the costs and expenses for the parties' child. David Huntley testified about how Huntley Brothers laid off Father. On cross-examination, Mr. Huntley testified the company laid off Father rather than offer him a reduced salary with a different position because Mr. Huntley "know[s]" Father and did not think he would accept it. Finally, at the hearing, the parties argued during closing argument about whether the trial court could impute income to Father for the child support calculation based on a determination he was acting in bad faith.

¶ 8 Following the hearing, the trial court entered its initial "Order for Modification of Permanent Child Support" on 16 April 2021. (Capitalization altered.) The trial court entered the "Amended Order for Modification of Permanent Child Support" (*i.e.*, the Child Support Modification Order) on 21 April 2021. Father appeals from the Child Support Modification Order, so we focus on that Order's contents.

¶ 9 First, the trial court made Findings about the procedural history of the case and jurisdiction, including the previous child support order and Mother's Modification Motion. It then found "there had been a substantial change in circumstances affecting the welfare of the minor child, which warrants a modification of child support," for the three reasons listed in Mother's Modification Motion; in addition, Mother's income had "increased substantially." Next, the trial court made Findings on Mother's and Father's income. As part of these Findings, the trial court

found Father had "intentionally failed to comply" with requirements to provide income verifications for his employment with Huntley Brothers or his masonry business. The trial court also found Mr. Huntley's testimony about how Father was laid off was not "credible, especially in light of Father expressing that he has no intention of looking for employment, filing for unemployment or applying for /taking another position . . . ." As a result, the trial court rejected Father's contention his income was $0. Based on those facts, the trial court also determined Father acted in "bad faith" and "deliberate[ly]" tried to "suppress[]" his income "to avoid or minimize his child support obligation," so it imputed income to him. Finally, the trial court made Findings incorporating the appropriate worksheet from the North Carolina Child Support Guidelines and modifying Father's child support retroactive to 1 September 2020 with appropriate arrears.

¶ 10        The trial court then made Conclusions of Law on its jurisdiction, Father's bad faith and the resulting imputation of income, and the reasonableness of the child support obligation that would begin 1 September 2020. As a result, the trial court ordered Father pay approximately $1140 in child support each month beginning 1 September 2020 and lasting until the child "turns 18-years-old or graduates high school, whichever is later." The trial court also awarded arrears of $5,510 and set out a payment schedule for the arrears of $363 per month and ordered him to pay a portion of the child's medical, dental, and counseling bills.

On 20 May 2021, Father filed a written notice of appeal from the Child Support Modification Order.

## II. Analysis

"[C]hild support modification is a two-step process." *Harnett County ex rel. De la Rosa v. De la Rosa*, 240 N.C. App. 15, 23, 770 S.E.2d 106, 112 (2015) (quotations and citation omitted). First, the trial court must "determine a substantial change of circumstances has taken place." *Id.* (quotations and citation omitted). Second, if a substantial change has occurred, the court "calculate[s] the applicable amount of support." *Id.* (quotations and citation omitted). On appeal, Father does not challenge the trial court's Finding and Conclusion "there has been a substantial change in circumstances affecting the welfare of the minor child, which warrants a modification of child support." Therefore, we focus on the trial court's calculation of child support.

As this Court has previously explained

> [N]ormally, a party's ability to pay child support is determined by that party's income at the time the award is made. However, capacity to earn may be the basis for an award where the party deliberately depressed his income or deliberately acted in disregard of his obligation to provide support. Before earning capacity may be used as the basis of an award, there must be a showing that the actions which reduced the party's income were taken in bad faith, to avoid family responsibilities.

*Balawejder v. Balawejder*, 216 N.C. App. 301, 312–13, 721 S.E.2d 679, 686 (2011) (quoting *Pataky v. Pataky*, 160 N.C. App. 289, 306–07, 585 S.E.2d 404, 415–16 (2003),

*aff'd per curium*, 359 N.C. 65, 602 S.E.2d 360 (2004) (quotations, citations, and alterations in original block quotation omitted)); *see also State ex rel. Williams v. Williams*, 179 N.C. App. 838, 840–41, 635 S.E.2d 495, 497 (2006) ("Capacity to earn, however, may be the basis of an award [of child support] if it is based upon a proper finding that the husband is deliberately depressing his income or indulging himself in excessive spending because of a disregard of his marital obligation to provide reasonable support for his wife and children." (quoting *Beall v. Beall*, 290 N.C. 669, 673–74, 228 S.E.2d 407, 410 (1976)) (emphasis from original omitted)); North Carolina Child Support Guidelines, AOC-A-162 (rev. 1 March, 2020) (hereinafter "Child Support Guidelines")[4] ("If the court finds that the parent's voluntary unemployment or underemployment is the result of the parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation, child support may be calculated based on the parent's potential, rather than actual, income."). This Court also refers to the use of earning capacity to determine a party's child support obligation as "imputation of income." *See Balawejder*, 216 N.C. App. at 312, 721 S.E.2d at 686 (introducing the above block quote as "the legal and factual bases for imputation of income for purposes of child support").

---

[4] Available at: https://ncchildsupport.ncdhhs.gov/ecoa/cseGuideLineDetails.htm.

¶ 14        Father's appeal primarily focuses upon the trial court's determination he was acting in bad faith, and therefore the trial court could impute income to Father when calculating child support. Within this broad argument, Father challenges several Findings of Fact (10(c), 10(e), 11(f), 12, 13, and 14) supporting the trial court's bad faith determination as well as its ultimate decision to impute income to Father. Father also argues one Finding (11(g)[5]) unrelated to the bad faith determination "was not supported by sufficient evidence." We address the standard of review and then review those arguments in turn.

**A. Standard of Review**

¶ 15        "The standard of review of a trial court's determination of child support is abuse of discretion." *State ex rel. Midgett v. Midgett*, 199 N.C. App. 202, 205, 680 S.E.2d 876, 878 (2009) (citing *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005)); *see also Loosvelt v. Brown*, 235 N.C. App. 88, 93, 760 S.E.2d 351, 354–55 (2014) ("Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." (quoting *Leary v. Leary*, 152 N.C. App. 438,

---

[5] The Finding Father labels and challenges as Finding 11(g) is actually the second Finding labeled 11(f) in the Child Support Modification Order. Since Father also challenges the first Finding labeled 11(f), we will continue to refer to the second Finding labeled 11(f) as Finding 11(g) to distinguish between the two. When we discuss the Findings below, we also quote them from the record to ensure all interested parties and readers know which we are discussing.

441–42, 567 S.E.2d 834, 837 (2002) (alteration from original omitted))); *Cauble v. Cauble*, 133 N.C. App. 390, 395, 515 S.E.2d 708, 712 (1999) (including same abuse of discretion standard for the "amount of a trial court's child support award"). Under the abuse of discretion standard of review, "the trial court's ruling will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Loosvelt*, 235 N.C. App. at 93, 760 S.E.2d at 354–55 (quoting *Leary*, 152 N.C. App. at 441–42, 567 S.E.2d at 837).

Further, to ensure "the trial court correctly exercised its function to find the facts and apply the law thereto," we ensure "evidence . . . support[s] findings; findings . . . support conclusions; [and] conclusions . . . support the judgment." *Midgett*, 199 N.C. App. at 206, 680 S.E.2d at 878–79 (quoting *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980)); *see also Loosvelt*, 235 N.C. App. at 98, 760 S.E.2d at 358 ("[W]e review the child support award to consider if the evidence supports the findings of fact, the findings support the conclusions of law, and the conclusions support the judgment." (citing *Atwell v. Atwell*, 74 N.C. App. 231, 234, 328 S.E.2d 47, 49 (1985))). As pertinent to Father's arguments on appeal, "this Court is bound by the trial court's findings where there is competent evidence to support them." *Cauble*, 133 N.C. App. at 395–96, 515 S.E.2d at 712 (quotations, citations and alterations omitted); *see also Midgett*, 199 N.C. App. at 206, 680 S.E.2d at 879 ("This Court's review of a trial court's findings of fact is limited to whether there is competent

evidence to support the findings of fact, despite the fact that different inferences may be drawn from the evidence." (quotations and citations omitted)). When an appellant does not challenge the trial court's findings of fact on appeal, they are binding. *See Loosvelt*, 235 N.C. App. at 96, 760 S.E.2d at 356 (holding findings binding on appeal after explaining they were not challenged).

## B. Bad Faith and Imputation of Income

¶ 17        Turning to the merits of his appeal, Father primarily argues "the trial court committed reversible error by finding [he] acted in bad-faith and then by imputing income to [him]." (Capitalization altered.) The trial court determined Father acted in "bad faith" and "deliberate[ly] suppress[ed]" his income "to avoid or minimize his child support obligation" in two paragraphs included in both its Findings of Fact and Conclusions of Law:

> Father's failure to provide the Court and the opposing party with the most recent documentation of his income from Huntley Brothers and his business and as a response to discovery requests shows Father's bad faith and a deliberate suppression of income to avoid or minimize his child support obligation. Further, Father's intent to not file for unemployment and not applying for/taking another position at Huntley Brothers (of which he qualifies) or another company while simultaneously alleging that he has been laid off and has no current income shows Father's bad faith and a deliberate suppression of income to avoid or minimize his child support obligation.
>
> Father's voluntary unemployment and/or underemployment is the result of his bad faith or

deliberate suppression of income to avoid or minimize his child support obligation after March 12, 2021. A potential income is imputed to Mr. Cash, such that he has the capacity to earn at least $9,774.49 per month after March 12, 2021, as evidenced by his income with Huntley Brothers.

¶ 18    Father challenges the trial court's determination he acted in bad faith on both the listed grounds, the failure to provide discovery and the circumstances surrounding the end of his employment with Huntley Brothers.  As part of his challenge, Father also contends four Findings of Fact (10(e), 10(c), 11(f), and 12) that underlie the bad faith determination are "not supported by the evidence."[6] (Capitalization altered.)  We first address Father's argument the Findings of Fact are unsupported and then address his argument about the trial court's overall bad faith determination.

### 1.  *Challenges to Findings of Fact Related to Bad Faith*

¶ 19    We first address Father's challenge to Findings of Fact 10(e), 10(c), 11(f), and 12.  Findings 10(e) and 12 both involve credibility determinations made by the trial court.  Finding 10(e) provides:

> e. The court does not find the letter or Mr. Huntley's testimony to be credible, especially in light of Father

---

[6] Father also challenges Findings 13 and 14, which are the two paragraphs included above where the trial court explains why it determined Father acted in bad faith.  Because those Findings are actually Conclusions of Law, we will review them as such. *See Walsh v. Jones*, 263 N.C. App. 582, 589–90, 824 S.E.2d 129, 134 (2019) ("The labels 'findings of fact' and 'conclusions of law' employed by the trial court in a written order do not determine the nature of our review." (quotations, citation, and alterations omitted)).

expressing that he has no intention of looking for employment, filing for unemployment or applying for /taking another position at Huntley Brothers (of which he qualifies) or another company while simultaneously arguing that the Court should find his income to be $0 for the purpose of calculating child support. The court rejects Father's argument that his current income is $0.

Finding 12 states:

12. The North Carolina Guidelines require[] parties to provide proof of current earnings, Father intentionally failed to comply with this requirement.

Father's challenge to both these Findings fail for the same reason: this Court does not "determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal." *Craven County ex rel. Wooten v. Hageb*, 277 N.C. App. 586, 2021-NCCOA-231, ¶ 14 (quoting *Coble*, 300 N.C. at 712–13, 268 S.E.2d at 189); *see also Loosvelt*, 235 N.C. App. at 104–05, 760 S.E.2d at 361 ("[A]rguments about which evidence should weigh more heavily are properly directed to the trial court, which has the discretion to determine the credibility and the weight of the evidence." (citing *Coble*, 300 N.C. at 712–13, 268 S.E.2d at 189).

¶ 20 The other two challenged Findings, Findings 10(c) and 11(f), both concern discovery and verification of Father's income. Finding 10(c) provides:

c. Father was served with interrogatories and requests for production of documents which included requests for ongoing verification of his income; however, Father did not provide a paystub from Huntley Brothers after the December 31, 2020 paystub mentioned in the above

> paragraph nor did he present documentation of his income
> from Huntley Brothers to the Court.

Finding 11(f) states:

> f. Father was served with interrogatories and requests for
> production of documents which included requests for
> ongoing verification of his income. The last business
> statement Father provided to the opposing side was for
> November 2020. Approximately $15,000.00 was remaining
> in Father's business account at the close of November 2020.
> Father offered no current documentation of his business
> income and expenses at trial.

These Findings closely resemble each other with identical first sentences and then similar remainders that focus on Father not providing the appropriate documents for his income.

¶ 21 We can also address the challenges to these Findings similarly. For both Finding 10(c) and 11(f), the first sentence is not (fully) supported by competent evidence, but the remainder of the Findings is supported. The printed record on appeal does not include any competent evidence concerning interrogatories and requests for document production directed towards Father, only documentation for such discovery items directed towards Mother, which was introduced into evidence at the hearing.

¶ 22 Turning to the transcript, the clearest discussion of interrogatories or requests for document production directed at Father came at the start of the hearing when the trial court asked if the parties had exchanged documentation. Mother's attorney said

she had not received updated financial information from Father, which "was all part of the Request for the Production of Documents" and an "ongoing discovery issue." "It is axiomatic that the arguments of counsel are not evidence." *Crews v. Paysour*, 261 N.C. App. 557, 561, 821 S.E.2d 469, 472 (2018) (quotations, citation, and alteration omitted); *see also Blue v. Bhiro*, 381 N.C. 1, 2022-NCSC-45, ¶ 12 ("[I]t is axiomatic that the arguments of counsel are not evidence." (quotations and citation omitted)).

¶ 23     The only other discussion of Father having an obligation to provide documents came when they were discussing his business statements:

> Q.   All right.   And do you recall having to produce documents back last year sometime?  I won't ask you to tell me the exact date.
> A. Oh, yeah.  Yeah, I think we've done it a couple times.
> Q. Right.  Where you came up with a bunch of documents?
> A. Yes.
> Q.  Why did you not provide a December statement, Mr. Cash?
> A.  I didn't -- I didn't really know that I didn't do it.  But I can't remember when -- when the last time we did the discovery was.
> Q.  Okay.  And you understand that you have an ongoing obligation to provide updated statements, correct?
> A.  I mean, I -- if I'm asked, yeah.  I didn't -- like ---
> Q.  All right.
> A.   --- I've been asked to provide everything.  I didn't – haven't just not done it, just been asked.

While the discussion is not entirely clear, Father acknowledged he had "been asked to provide everything," referring back to the "ongoing obligation to provide updated statements" but had "just not done it."  This testimony, then, supports that Father

has an ongoing obligation to at least provide business statements, thereby at least partially supporting the first sentence of Finding 11(f). Although Father acknowledged he had been asked to provide financial information and he had failed to provide all the information requested, he did not say whether this request came in the form of interrogatories and a request for production or from the requirements of the Child Support Guidelines and Local Rules. The record includes no evidence Father was served with interrogatories and requests for production of documents, let alone the specific questions seeking ongoing verification of his income, so the first sentences of these Findings are not fully supported by competent evidence.

¶ 24      But Father was required to provide his income verification even if Mother had not served interrogatories and requests for production for this information, thereby blunting the impact of the lack of evidence that discovery requests required such action. First, the Child Support Guidelines include the following requirements for income verification:

> Child support calculations under the guidelines are based on the parents' current incomes at the time the order is entered. Income statements of the parents should be verified through documentation of both current and past income. Suitable documentation of current earnings (at least one full month) includes pay stubs, employer statements, or business receipts and expenses, if self-employed. Documentation of current income must be supplemented with copies of the most recent tax return to provide verification of earnings over a longer period. Sanctions may be imposed for failure to comply with this

provision on the motion of a party or by the court on its own
motion.

Additionally, the Local Rules of Judicial District 19A on "Non-Jury Domestic Relations" require parties to bring income verification documents to child support hearings: "In all child support and post separation cases, both parties shall bring to the hearing records of their earnings for the past two years including tax returns, pay stubs, or other records." Civil Rules of District Court of the 19A District Court District, Rule 7.2 (last revised 3/04) (Capitalization altered.).[7] Similarly, the "Amended Financial Affidavit" Father filed 12 March 2021, a mere five days before the hearing on the Modification Motion, directed Father to "attach to this affidavit copies of the past two (2) months wage and earnings statements." (Capitalization altered.) Both of these provisions required Father to provide more updated information than he did according to Findings 10(c) and 11(f)—pay stubs more recent than 31 December 2020 and business statements more recent than November 2020.

¶ 25        The rest of these challenged Findings (10(c) and 11(f)) are supported by competent evidence because Father did not provide additional documentation past the dates listed in the Findings. Related to his income from the job with Huntley Brothers, during questioning by Mother's attorney, Father initially said he did not

---

[7] These local rules are available at: https://www.nccourts.gov/assets/documents/local-rules-forms/170.pdf.

even have a pay stub as recent as December 2020 before later providing information for his pay for the entire year of 2020, indicating they found the pay stub.[8]  Turning to his business statements, Father testified he provided statements through November 2020 but did "not presently" have any December 2020 or January or February 2021 statements to "back up [his] testimony."  And he testified he had approximately $15,000 in his business account as of the end of November, in line with the last remaining part of Finding 11(f).  Therefore, the remainder of the challenged Findings on discovery issues are supported by competent evidence and are therefore binding.  *Cauble*, 133 N.C. App. at 395, 515 S.E.2d at 712.

¶ 26        Thus, even if the trial court incorrectly identified the specific mechanism by which Father was required to provide these documents—discovery requests instead of requirements of the Local Rules and Child Support Guidelines—its fundamental point in Findings 10(c) and 11(f) was still correct.  Father had an obligation to provide additional documentation to support his income, but he failed to do so.  Further, aside from the first sentences, the trial court's Findings that Father failed to provide updated income verification documents for his job at Huntley Brothers and his own business are supported by competent evidence.

---

[8] This testimony came when Father was reviewing Plaintiff's Exhibit 19, which were his pay stubs from Huntley Brothers.  While this exhibit was admitted into evidence, it is not in the record on appeal because it "can't be located."  Therefore, we cannot additionally confirm, beyond the testimony, the pay stubs Father provided by reviewing this exhibit.

### 2. *Bad Faith Determination*

Turning to his challenge to the trial court's bad faith determination overall, Father first argues the trial court erred in determining he was acting in bad faith based on the events surrounding the end of his employment with Huntley Brothers. Father then asserts the trial court erred by concluding he "acted in bad faith by not updating his discovery documents." We review the trial court's bad faith determination for abuse of discretion; "the trial court's ruling will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Loosvelt*, 235 N.C. App. at 93, 760 S.E.2d at 354–55.

As explained above, to impute income to a party, the trial court must determine "the actions which reduced the party's income were taken in bad faith, to avoid family responsibilities." *Balawejder*, 216 N.C. App. at 312, 721 S.E.2d at 686. When considering whether to impute income to a party, the following factors support a determination the party acted in bad faith:

> (1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) acting in deliberate disregard for his support obligations, (4) refusing to seek or to accept gainful employment, (5) willfully refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, or (8) intentionally leaving his employment to go into another business.

*Lueallen v. Lueallen*, 249 N.C. App. 292, 312–13, 790 S.E.2d 690, 704 (2016) (quoting

*Mason v. Erwin*, 157 N.C. App. 284, 288–89, 579 S.E.2d 120, 123 (2003)); *see also Wolf v. Wolf*, 151 N.C. App. 523, 526–27, 566 S.E.2d 516, 518–19 (2002) (including same list with citation to *Bowes v. Bowes*, 287 N.C. 163, 171–72, 214 S.E.2d 40, 45 (2002)).

¶ 29    The trial court's bad faith reasoning based on the circumstances surrounding Father leaving Huntley Brothers implicates factors (4) and (5) listed above.  Father refused to seek or accept gainful employment and willfully refused to find or take a job based on the following unchallenged or supported Findings of Fact:

> d. A letter from Chet Huntley, of Huntley Brothers was received into evidence. In said letter, Mr. Huntley states that Father was laid off as a Masonry Supervisor. Mr. David Huntley testified on Father's behalf and is a 25% owner of Huntley Brothers and a good friend of Father. David Huntley and Father socialized with each other at least every other weekend. Mr. Huntley testified that Father was laid off on March 12, 2021, which was less than one (1) week prior to the hearing. Mr. Huntley admitted that Father was the only employee laid off out of one hundred and twenty (120) of Huntley Brothers employees. During cross-examination, Mr. Huntley admitted that Huntley Brothers was currently advertising for several positions all of which Father was qualified. One of the positions paid $50,000 per year. Mr. Huntley testified that he did not offer Father a lower salary because he "knows" Father and Father would not accept a lower salary. Mr. Huntley testified that Father's performance was not a factor in the company's decision to eliminate Father's role. Rather, Father's position was eliminated due to the high cost of Father's supervisor salary and because Father was the most recent supervisor hire.
>
> e. The court does not find the letter or Mr. Huntley's testimony to be credible, especially in light of Father

> expressing that he has no intention of looking for employment, filing for unemployment or applying for /taking another position at Huntley Brothers (of which he qualifies) or another company while simultaneously arguing that the Court should find his income to be $0 for the purpose of calculating child support. The court rejects Father's argument that his current income is $0.

These Findings align with the trial court's reasoning that Father's "intent to not file for unemployment and not applying for/taking another position at Huntley Brothers (of which he qualifies) or another company while simultaneously alleging that he has been laid off and has no current income shows Father's bad faith." The trial court thus made a reasoned decision and therefore did not abuse its discretion. *Loosvelt*, 235 N.C. App. at 93, 760 S.E.2d at 354–55.

¶ 30 Father's arguments on appeal otherwise are not persuasive. As to the trial court's determination that his claim to have zero income was not credible, Father argues the trial court "could have disregarded his Amended Affidavit" and used his business income rather than impute income to him since that was "why he was not looking for a different employment." First, this argument ignores the "substantial deference" we give to trial courts in child support cases. *Id.*, 235 N.C. App. at 93, 760 S.E.2d at 354. Assuming *arguendo* the trial court could have used Father's business income instead, we note Father failed to provide current documentation as to his business income and expenses, as he was required to do by the Local Rules and Child Support Guidelines. Child Support Guidelines; Civil Rules of District Court of the

19A District Court District, Rule 7.2. The trial court had the discretion to impute income based upon the best information available regarding Father's recent earnings and employment information, and that information came from his employment with Huntley Brothers. The trial court also noted it did not find Father's claim of being laid off immediately prior to the child support hearing credible and stated several reasons for this credibility determination. Because the trial court made a reasoned decision to impute income, we will not disturb this decision on appeal. On a more fundamental level, Father cannot now claim the trial court should have ignored the very Amended Affidavit he presented, and swore to the truth of via his verification, on the eve of the hearing and instead ask the trial court to use his unsupported claims as to his business income. Our courts have long held, "the law does not permit parties to swap horses between courts in order to get a better mount." *Peters v. Pennington*, 210 N.C. App. 1, 15, 707 S.E.2d 724, 734–35 (2011) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)) (alterations from original omitted). We reject Father's new attempt on appeal to get a better mount by arguing the trial court should have relied upon his business income.

¶ 31    Father also argues finding employment at the same level following an "involuntar[y] la[y] off" was not required because "[t]he facts here are very similar to the facts in" *Sharpe v. Nobles*, 127 N.C. App. 705, 493 S.E.2d 288 (1997). Father misreads *Sharpe*. In *Sharpe*, the father was laid off from a position that paid $56,000

per year and then took positions that paid $46,000 and eventually $40,000 per year. 127 N.C. App. at 708–09, 493 S.E.2d at 290. While the trial court determined the father acted in bad faith, this Court found merely "not look[ing] for work that would pay him what he made before changing jobs" did not amount to bad faith. *Id.* Here, by contrast, Father had not taken another job at all; the trial court found he "has no intention of looking for employment . . . or applying for/ taking another position at Huntley Brothers (of which he qualifies) or another company." If Father had taken the $50,000 per year position at Huntley Brothers, his situation might have resembled that in *Sharpe*, but his own "good friend" testified Father "would not accept a lower salary" in addition to Father's own testimony on the matter. Therefore, the trial court did not abuse its discretion in determining Father acted in bad faith and could therefore have income imputed to him based on his failure to seek alternative employment.

¶ 32    Turning to the trial court's other ground for determining Father acted in bad faith—his failure to provide relevant income verification documents—we need not address this ground. *See Lueallen*, 249 N.C. App. at 313, 790 S.E.2d at 704 (emphasizing in response to party's argument against one factor in the trial court's bad faith determination that "[t]he trial court identified other factors as well"). And if we were to address this ground, the trial court still would not have abused its discretion in determining Father acted in bad faith. The "dispositive issue" when

deciding whether to impute income "is whether a party is motivated by a desire to avoid his reasonable support obligations." *Wolf*, 151 N.C. App. at 527, 566 S.E.2d at 519. Failing to provide income verification as required provides some evidence a party is intentionally seeking to avoid or minimize the child support obligation because any hidden income will typically increase the amount of child support owed. *See Balawejder*, 216 N.C. App. at 312, 721 S.E.2d at 686 ("Normally a party's ability to pay child support is determined by that party's income at the time the award is made." (quotations, citations, and alterations omitted)); Child Support Guidelines ("The Schedule of Basic Child Support Obligations is based upon net income converted to gross annual income . . . .").

¶ 33    This case is illustrative of exactly how that would happen. Here, Father filed an Amended Financial Affidavit a week before trial indicating he had been laid off and therefore his income was zero. But Father also had his own business that in the past had provided additional income. By claiming in his Amended Affidavit his income was zero and not providing documentation about his business, Father wanted the trial court to accept his income was zero, which would lead to a lower child support obligation than if he had some business income. This understanding implicit in the trial court's bad faith determination is not "so arbitrary that it could not have been the result of a reasoned decision." *Loosvelt*, 235 N.C. App. at 93, 760 S.E.2d at 355. Therefore, the trial court did not abuse its discretion in determining Father acted in

bad faith based in part on Father's failure to provide income verification, although as we have already said the other ground for bad faith was sufficient on its own.

¶ 34        Father's argument to the contrary is not persuasive. Father contends "[n]one of the reasons cited in *Wolf* provide for a court to find a party acting in bad faith or impute income based on a failure to provide discovery." Father is correct none of the eight reasons above, which originally came from *Wolf*, address discovery failures. *See Wolf*, 151 N.C. App. at 526–27, 566 S.E.2d at 518–19 (listing eight factors recounted above). But *Wolf* does not say those reasons are exclusive; it instead reiterates "[t]he dispositive issue is whether a party is motivated by a desire to avoid his reasonable support obligations." *Id.*, 151 N.C. App. at 527, 566 S.E.2d at 519. And Father cites no other caselaw indicating *Wolf*'s factors are exclusive or replace that dispositive issue.

¶ 35        Thus, we hold the trial court had competent evidence to support the challenged Findings of Fact related to bad faith and did not abuse its discretion in determining Father acted in bad faith such that it could impute income to him.

## C. Challenge to Finding 11(g)

¶ 36        Father also argues Finding 11(g)—which focuses on health insurance for the minor child and thus is not related to the bad faith issue—"was not supported by sufficient evidence." As with the Findings related to bad faith, we review this challenge to determine "whether there is competent evidence to support the" Finding.

*Midgett*, 199 N.C. App. at 206, 680 S.E.2d at 879.

¶ 37        Finding 11(g) states:

> [g.] Father has no other children for whom he pays support. Father provided no evidence of his providing health insurance on [the child]. Father testified that [the child] will be covered through Father's wife's insurance but failed to say how much the premiums would be or when coverage would begin. Father failed to provide evidence of the cost of health insurance premiums for the minor child through his employment with Huntley Brothers.

Father does not argue with the first sentence about his lack of other children to support, but he does challenge the remainder of the Finding on medical insurance for his and Mother's child. Therefore, we only focus on the challenge to the remainder of the Finding.

¶ 38        The trial court had competent evidence for the remainder of Finding 11(g). The sentence about Father providing no evidence of his providing health insurance for the child is an introduction to the other sentences that explain what the trial court meant, so if the other sentences are supported, the first sentence is supported. As the trial court found, Father testified his wife's insurance would cover the child since he was laid off. Father did not testify about how much premiums would be or when that coverage would begin as the previous testimony about his wife's insurance covering the child was his only testimony on the topic. Father argues his Amended Financial Affidavit lists the monthly insurance premium and therefore he did provide evidence

for how much the premium would be. But his Amended Financial Affidavit only lists "Total Health Insurance Premium Costs." It does not indicate how much of the premium is his health insurance versus the health insurance premium for his child. Finally, Father also did not testify about the cost of health insurance premiums for the child while he was working at Huntley Brothers. While his original Financial Affidavit prepared when he was still employed at Huntley Brothers lists his "Total Health Insurance Premium Costs," it also does not breakdown the costs specific to the child versus him and anyone else covered under the insurance policy. Thus, Finding 11(g) is fully supported by competent evidence.

### III.    Conclusion

¶ 39          After reviewing all of Father's contentions on appeal, we affirm the trial court's order. As to its imputation of income to Father, the trial court had competent evidence to support its Findings of Fact, and it did not abuse its discretion in concluding Father acted in bad faith. As to the challenged Finding on health insurance, the trial court also had competent evidence to support that Finding.

AFFIRMED.

Judges DIETZ and ZACHARY concur.